### JAMES HENDERSON NEWKIRK A/K/A Gregory Smith *v.* STATE OF MARYLAND

[No. 1145, September Term, 1975.]

*Decided September 15, 1976.*

The cause was argued before ROBERT C. MURPHY, Chief Judge of the Court of Appeals, ROBERT E. CLAPP, JR., Associate Judge of the Sixth Judicial Circuit, and ROBERT L. KARWACKI, Associate Judge of the Eighth Judicial Circuit, all specially assigned.

*Robert W. Baker, Jr., Assigned Public Defender,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *David Katz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, J., delivered the opinion of the Court.

Appellant Newkirk was charged in the Criminal Court of Baltimore with the murder of Ronald Rice, using a handgun in the commission of that offense, and of assaulting Reginald Rice with intent to murder him.

According to prosecution evidence adduced at the trial, the appellant made a homosexual advance toward James Nicholson in the presence of his brother Broderick and the two Rice brothers. James struck the appellant and the appellant threatened to kill him. The appellant and Ronald Rice then got into an argument after which the appellant left the scene, stating "I'm coming back." Shortly thereafter, the appellant returned, armed with a gun and opened fire. He shot and killed Ronald Rice and wounded Reginald. He fired shots at Broderick Nicholson, who fled the scene.[1]

According to the defense version of the incident, the appellant was attacked by the other youths. Broderick Nicholson produced a gun and appellant fought him for possession of the weapon. In the course of the struggle, two shots were accidentally discharged, resulting in the death of

---

1. James had gone home after the initial altercation.

Ronald and the wounding of Reginald Rice. The appellant's defense at the trial was that the two shootings were accidental and thus unintentional.

The court instructed the jury that the State had the burden to prove beyond a reasonable doubt that the appellant was guilty of the offenses charged. It said that under Maryland law "it is presumed that all felonious killings are murder in the second degree and the burden is upon the defendant ... to show that it constituted manslaughter or that it was justifiable homicide or an unintentional homicide." The court told the jury that the burden was on the State "to elevate the offense to murder in the first degree ... [by showing] beyond a reasonable doubt that the killing was willful, deliberate, and premeditated." In its instructions, the court defined the term "willful" to mean "a specific purpose and design to kill as distinguished from accidental or negligent"; it defined "deliberate" to mean "acting in a cool state as distinguished from a heated state"; and it defined "premeditation" to mean "a planned scheme ahead of time before the commission of the fatal act ... [an] entertaining in the mind of the desire to kill." The court then defined "malice" to mean "the intentional doing of a wrongful act to another without legal excuse or justification" and said that it included "any wrongful act done willfully or purposefully." The court instructed the jury that "[m]alice may be inferred from the use of a deadly weapon directed at a vital portion of the body and it may also be inferred from the nature and extent of the injuries inflicted."

The court further instructed the jury that second degree murder was "the unlawful killing of a human being with malice and deliberation but without premeditation." It said that the crime of assault with intent to murder "is assault ... coupled with the intention to do grievous bodily harm"; to find the appellant guilty of this offense, the court said "the jury must find that the facts are such that [had] the victim ... died, the person who made the assault would have been guilty of the crime of murder, either in the first degree or in the second degree."

The court concluded its instructions with the following summary:

"... It has been contended by the State that the defendant left the scene and returned to the scene some time thereafter and fired several shots, one of which struck and caused the death of Ronald Rice, another of which struck and injured Reginald Rice, and there is a further contention on the part of the State that shots were fired at Broderick Nicholson and Broderick Nicholson ran to prevent injury or death to himself. The State further contends that the defendant, immediately upon the shooting of the victims, left the scene of the shooting."

\* \* \*

"The defense, on the other hand, has contended that the defendant was assaulted and was attacked by a group in which the victims were members and that in attempting to free himself or to protect himself, he grabbed the arm of Broderick Nicholson and that Broderick Nicholson at that time was holding the pistol in his hand and the pistol fired, not by any attempt of the defendant to fire the pistol. In other words, the contention is that the pistol was fired independent of the efforts of the defendant."

No exceptions were taken to the instructions. The jury found the appellant guilty of the first degree murder of Ronald Rice, of using a handgun in the commission of that crime, and of assault with intent to murder Reginald Rice.

Appellant contends on appeal that his convictions must be reversed because the jury instructions unconstitutionally placed the burden upon him of proving that the shootings were accidental and constituted an excusable homicide. He contends that the burden of proving non-accident was upon the State and any jury instruction fairly interpreted as relieving the State of this burden is unconstitutional under *In re Winship*, 397 U. S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881,

44 L.Ed.2d 508 (1975), as explicated by *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300 (1975), *aff'd State of Maryland v. Edward Evans*, 278 Md. 197, 362 A. 2d 629 (1976).

The appellant also contends that the court's instructions erroneously relieved the State of its burden to prove every element of the crime of murder by permitting the jury to infer malice from the nature and extent of the injuries inflicted. He urges that such an inference is completely illogical and improbable, "especially in light of a claim of accident," and cannot constitutionally be drawn in view of the Supreme Court's holding in *Leary v. United States*, 395 U. S. 6, 89 S. Ct. 1532, 23 L.Ed.2d 57 (1969).

We think it clear that the jury instructions (1) that all felonious killings are presumed to constitute murder in the second degree, (2) that an inference of malice may be drawn solely from the nature and extent of the injuries inflicted, and (3) that the appellant has the affirmative burden to prove his defense of accidental shooting were plainly violative of the constitutional principles enunciated in *Mullaney* and *Winship*. *See Evans v. State, supra*. But as we recognized in *Dorsey and Wilson v. State*, 29 Md. App. 97, 349 A. 2d 414 (1975), *aff'd Josephine Dorsey v. State of Maryland*, 278 Md. 221, 362 A. 2d 642 (1976), the constitutional impropriety of jury instructions is not dispositive; rather the impropriety must be judged in terms of its materiality and impact in a particular case. In other words, to determine the validity of a given conviction in view of *Mullaney* it is necessary to consider the relationship of the offense of which the accused is convicted to the particular defense he puts forth; and this relationship must be judged in light of the specific parts of the instruction dealing with that defense.

In *Evans v. State, supra*, we considered the effect of an erroneous allocation of the burden of persuasion as to the defense of mitigation due to adequate provocation where a jury returned a verdict for murder in the first degree; we said:

"... any error in instructing as to the allocation of

the burden of persuasion on the subject of mitigation (such mitigation, for purposes of holding the homicidal *mens rea* down to the manslaughter level, being fairly an issue in the case) will have been cured by a verdict of murder in the first degree. The evil aimed at by *Mullaney v. Wilbur*, where the issue is manslaughter versus murder, is that a presumption of malice unfairly relieves the State of the burden of proving non-mitigation (mitigation being fairly an issue in the case). Where the ultimate verdict is that of murder in the second degree, the presumption may, therefore, have been pivotal. Where, on the other hand, the verdict is murder in the first degree, the State will have proved every element, including the negating of hot blood, beyond a reasonable doubt and due process will not have been offended." (Footnote omitted.) 28 Md. App. at 658.

At 640-41 of *Evans* we considered the effect of an erroneous allocation of the burden of persuasion as to the defenses of justification or excuse where the resulting conviction was for felonious homicide in any degree. Generalizing with respect to the effect of an erroneous instruction that "all intentional homicide will be presumed to be with malice" (thereby unconstitutionally presuming non-justification and non-excuse), we said:

"If a fair reading of the instructions indicates that the 'presumption of malice,' in that broader and unqualified form, operated to relieve the State of its burden of ultimate persuasion on the issue of non-justification and/or non-excuse (where either is a fair issue in the case), *Mullaney v. Wilbur* will require a reversal regardless of the degree of felonious homicide on which the conviction was had. Unlike the situation dealt with where the only issue in the case affected by the presumption was mitigation and the only advantage the defendant

was denied was the possible lowering of murder in the second degree to manslaughter, the harm on the issues of presumed non-justification and presumed non-excuse operates across the entire spectrum of culpability. If the defendant had had the benefit of a fair allocation of the burden of persuasion on these issues, he might well have been found not guilty totally and not simply guilty to a lesser degree. . . ." 28 Md. App. at 664.

The jury was instructed in the present case that for it to find a verdict of first degree murder the State must prove beyond a reasonable doubt that the killing was willful, deliberate and premeditated, the element of willfulness being defined as "a specific purpose and design to kill as distinguished from accidental." The State points out that the defense of accident is based on a theory of no intent, no willfulness, no premeditation, and no deliberation. It argues that by its verdict of first degree murder the jury found that the State sustained its burden of proof beyond a reasonable doubt that the appellant acted in a willful, deliberate and premeditated manner, thereby rejecting any claim of defense that the shootings were accidental. The State maintains that in these circumstances it did not rely on any unconstitutional presumption or inference of malice, and that notwithstanding the erroneous allocation of the burden of persuasion the first degree murder verdict "cured" the errors in the jury instructions.

In *Dorsey and Wilson v. State, supra,* a homicide case in which the trial court erroneously instructed the jury that the burden of proving mitigation was upon the defendant, we held, and the Court of Appeals agreed, that the jury's verdict of murder in the first degree cured the error in the instructions. We there noted that under the trial court's instructions the State was required to carry the burden of proving willfulness, deliberation, and premeditation and thus did not rely upon an unconstitutional presumption of malice. We said that the finding by a jury of the elements of first degree murder negated the existence of mitigating

circumstances, since malice and mitigation due to provocation could not coexist.

Considering the facts of the present case in view of the instructions given to the jury, we think the same rationale is applicable to the defense of excusable homicide based on a claim of accidental or unintentional killing. Since the jury found the appellant guilty of first degree murder, it is clear that it did not rely upon the erroneous instruction presuming all felonious homicides to constitute second degree murder; instead it concluded that the State had sustained the burden properly placed upon it by the instructions of proving, beyond a reasonable doubt, that the killing was willful, deliberate, and premeditated and hence not unintentional or accidental, as claimed by the defense. *Cf. Stambaugh v. State*, 30 Md. App. 707, 353 A. 2d 638 (1976), a case in which we reversed a conviction of second degree murder where the defense was accident and the jury was erroneously instructed that homicide was presumed to be murder in the second degree and that the burden was upon the defendant to establish excusable homicide. *See also Wilson v. State*, 28 Md. App. 168, 343 A. 2d 537 (1975).

As to the conviction of assault with intent to murder Reginald Rice, it is settled that to prove this offense the State must show, *inter alia*, that if death had ensued the killing would have constituted either first or second degree murder. *Tate v. State*, 236 Md. 312, 203 A. 2d 882 (1964); *Bremer v. State*, 18 Md. App. 291, 307 A. 2d 503 (1973). In view of the jury's verdict of first degree murder in connection with Ronald's death, it is patent that had Reginald died from his wound, inflicted upon him at the same time and under the same circumstances as that inflicted upon Ronald, the jury would have found him guilty of murder in the first degree. We therefore conclude that the erroneous instruction bearing on this offense was also cured by the first degree murder verdict.

Finally, we note that since no exceptions were taken to the instructions at the trial which was held after *Mullaney* was decided, appellant's contentions were not preserved for appellate review. *See John Henry Squire v. State of*

*Maryland,* 32 Md. App. 307, 360 A. 2d 443 (1976); Maryland
Rule 756 g.

*Judgments affirmed; costs to be
paid by appellant.*