Sylvester J. MORRIS,  # 134–720,
Appellant,

v.

**STATE OF MARYLAND, Appellee.**

No. 83–6072.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1983.

Decided Aug. 9, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 22, 1983.

Debra J. Markwitz, Third Year Law Student (Steven H. Goldblatt, Director, Appellate Litigation Clinical Program; Samuel Dash, Director, Appellate Litigation Clinical Program, Washington, D.C., G. Richard Strafer, Appellate Law Fellow, Appellate Litigation Clinical Program, W. Bronson Howell, Third Year Law Student, Georgetown University Law Center on brief) for appellant.

W. Charles Rogers, III, Asst. Gen. Counsel (Stephen H. Sachs, Atty. Gen. of Baltimore, Md., on brief) for appellee.

Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

Sylvester J. Morris was convicted in Maryland state court of first degree murder and his conviction was upheld on appeal. Morris subsequently petitioned the federal district court for a writ of habeas corpus, which that court denied. We issued a certificate of probable cause and now reverse.

### I.

Morris and his wife were experiencing severe marital difficulties in early 1974 and were living apart. On January 19, Morris fired a shotgun, wounding his wife and a man of whom Morris was jealous. Morris claimed that the shotgun discharged accidentally. He was arrested and released on bail.[1]

On February 10, Morris and his wife left her parents' home in his car to go to his apartment. Later that day Morris went to the Frederick, Maryland, city police headquarters and informed an officer that his wife had been shot and killed. Morris was informed of his *Miranda* rights,[2] and proceeded to make a self-inculpatory statement. Morris then took the police to her body, which was lying by the side of a road. Mrs. Morris was dead of a gunshot wound to the head.

At his trial, Morris testified that while they were in the car, his wife demanded money and, when his response did not satisfy her, slapped him in the face. She then reached under the car seat, where Morris knew there was a pistol, and picked up the gun. Morris grabbed her arm and struggled with her for the weapon, which went off accidentally, mortally wounding her. Morris insisted that he did not intend to harm or kill his wife. Once he was certain that she was dead, Morris dumped her body along the roadside and drove to his brother's house, where his brother advised him to turn himself in to the police.

The version of the shooting given by Morris at trial was substantially the same as that given by Morris to the police on February 10, with one exception: an officer testified that on the day of the shooting Morris told him that "I thought about the gun; I reached under the seat on the passenger side and got the gun."

> The trial judge instructed the jury that in order to elevate the crime to murder in the first degree, the state has the burden of proving beyond a reasonable doubt that the defendant killed the deceased; that he did so willfully, deliberately and with premeditation and of course with malice aforethought.

However, he also stated that

> [i]n the absence of justification, excuse or some circumstance in mitigation, all

---

1. Morris's conviction on the charge of assault with intent to murder stemming from this incident was reversed on appeal because the trial judge gave a jury instruction which relieved the state of the burden of proving the elements of malice.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

homicides are presumed to be committed with malice and to be murder in the second degree....

Finally, he charged the jurors that

[i]f you find beyond a reasonable doubt that there was an unlawful killing and that the defendant did it, in order to reduce the crime to manslaughter it is the defendant who has the burden of proving justification, excuse or some circumstance of mitigation, and he must do so by a preponderance of the evidence.

We talked about the State having the burden of proof beyond a reasonable doubt. Now in order to reduce the crime to manslaughter, the burden of proving justification, excuse or some circumstance in mitigation is upon the defendant, but he must do that only by a preponderance of the evidence.

The jury returned a verdict of first degree murder.

On appeal, Morris argued that the jury instructions denied him constitutional due process, citing *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).[3] The Maryland Court of Special Appeals agreed that the instructions were erroneous:

The flaw in the instruction, as given, was the erroneous allocation to the appellant of the burden of persuasion on the question of excuse. Not only did this relieve the State of proving beyond a reasonable doubt that the offense was not accidental, as mandated by *Mullaney,* it required the appellant to assume the burden of proving the offense was accidental as proscribed by *Mullaney.*

*Morris v. State,* 33 Md.App. 185, 364 A.2d 588, 589 (1976). However, relying on its decision in *Newkirk v. State,* 32 Md.App. 621, 363 A.2d 637 (1976), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2680, 53 L.Ed.2d 274 (1977), the court concluded that "the jury verdict of murder in the first degree cured the error by indicating that the State ... carried its rightful burden of proving every

element of the offense beyond a reasonable doubt." 364 A.2d at 589–90. The court reasoned that the verdict of first degree murder was a finding that Morris acted "willfully, deliberately and with premeditation;" the verdict, therefore, "*ipso facto,* negated the notion of accident beyond a reasonable doubt." *Id.* at 592. The court therefore affirmed the murder conviction. The Maryland Court of Appeals denied Morris's petition for review. In 1980 Morris petitioned for a federal writ of habeas corpus, which the district court denied.

## II.

On collateral review of an allegedly erroneous jury charge, a habeas petitioner must meet a "stricter standard of proof ... to show [constitutional] infirmity" than is required on direct review of a criminal conviction. *Cooper v. State of North Carolina,* 702 F.2d 481, 483 n. 2 (4th Cir.1983). The petitioner must show that "the offending instruction is so oppressive as to render a trial fundamentally unfair." *Adkins v. Bordenkircher,* 517 F.Supp. 390, 399 (S.D.W. Va.1981), *aff'd,* 674 F.2d 279 (4th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). The rationale for requiring this higher standard of proof lies in the nature of habeas corpus. "It is of the historical essence of habeas corpus that it lies to test proceedings so fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void." *Fay v. Noia,* 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837 (1963). The use of habeas corpus to remedy trial error of less serious dimensions would violate the "strong interest in preserving the finality of judgments, as well as the interest in orderly trial procedure." *Henderson v. Kibbe,* 431 U.S. 145, 154 n. 13, 97 S.Ct. 1730, 1737 n. 13, 52 L.Ed.2d 203 (1977) (citations omitted). *See also Rose v. Lundy,* 455 U.S. 509, 543–4 & n. 8, 102 S.Ct. 1198, 1216–1217 & n. 8, 71 L.Ed.2d 379 (1982) (Stevens, J., dissenting) (some errors which cannot be declared con-

---

**3.** *Mullaney* was decided shortly after Morris's trial. However, *Mullaney*'s holding is applicable retroactively. *See Hankerson v. North Car-*

olina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

stitutionally harmless on direct appeal nevertheless do not render a trial fundamentally unfair). Thus our task on this appeal is not to apply the harmless error analysis of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), but rather the test laid down by *Henderson v. Kibbe.*[4] *Henderson* requires us to determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* 431 U.S. at 154, 97 S.Ct. at 1737 (citation omitted). Since the state does not contend before us that the jury charge was free from error, what we must decide is whether the jury's verdict finding Morris guilty of first degree murder refutes the claim that the errors in the instruction on accident "infected the entire trial" so as to render it fundamentally unfair.[5]

We addressed a similar question in *Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820 (4th Cir.1982). In *Guthrie,* a defendant was convicted of first degree murder after instructions which told the jury that a person who directs a deadly weapon at another's vital organs is presumed to intend the probable consequences and that the defendant had the burden of negating criminal intent by proving extreme intoxication or heat of passion. Because "[t]he instructions concerning intoxication and heat of passion went only to the distinction between manslaughter and second-degree

murder," we held that the instructions' infirmity did not undercut the validity of the first degree murder conviction. *Id.* at 823.[6]

However, the jury charge at issue in *Guthrie* had another defect: the judge improperly put the burden of proving self-defense on the defendant. We rejected the state's claim that this mistake did not rise to constitutional stature.

> Because self-defense, if proven, exonerates an accused of any degree of culpable homicide, conviction of first-degree murder in no sense cures a self-defense instruction which erroneously places the burden of proof on the accused.

*Id.* at 825. On this reasoning, we reversed the denial of the writ of habeas corpus.

*Guthrie* relied on the opinion of the Maryland Court of Special Appeals in *Evans v. State,* 28 Md.App. 640, 349 A.2d 300 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976), in reaching this decision. *Evans* held that a bad instruction on defenses of mitigation (which go only to the distinction between manslaughter and second degree murder) can be cured by a verdict of first degree murder. The *Evans* court went on to state in dictum, which this court followed in *Guthrie,* that a different result would be required if the bad instruction concerned a defense of justification or excuse (for example, self-defense), since such a defense negates elements of both degrees of mur-

---

**4.** *Chapman* involved the direct review of a state criminal conviction; *Henderson* was a habeas case.

**5.** Morris also challenges the validity of the jury instructions as to self-defense. Although we are not precluded from considering this issue by Morris's failure to raise it at trial or on direct appeal, *see Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820, 823 n. 3 (4th Cir. 1982) (Maryland permits defendants convicted before *Mullaney v. Wilbur* to raise *Mullaney* claims despite procedural defaults), we need not reach it in light of our decision on Morris's challenge to the accident instruction.

**6.** In considering the effect of the erroneous intoxication and heat of passion instructions, *Guthrie* employed the language of harmless error, a doctrine we found inapplicable to this type of constitutional claim in *Cooper. See*

*Guthrie,* 683 F.2d at 823. It is clear, however, that any conflict between the two decisions is only verbal. Since *Guthrie* and *Cooper* were appeals from the denial of the writ of habeas corpus rather than direct appeals from the convictions being assailed, the rule of *Henderson v. Kibbe* applied, and the petitioners were obligated to show that the errors in the jury charge "infected the entire trial." *Henderson,* 431 U.S. at 154, 97 S.Ct. at 1737. The verdict of first degree murder in *Guthrie* demonstrated that the infirmity of the intoxication and heat of passion instructions did not render the entire trial fundamentally unfair by showing that the jury never needed to decide between manslaughter and second degree murder, the only decision that might have been warped by those instructions. The verdict therefore defeated the petitioner's attempt to show the existence of a constitutional error cognizable in habeas corpus.

der. *Guthrie,* 683 F.2d at 824–5, *quoting with approval Evans,* 349 A.2d at 317.[7]

█ *Guthrie* is dispositive of the present appeal. Like self-defense, "[t]he excuse of accident is not, of course, an affirmative type of defense but is rather a negation of the central element of an intentional killing." *Morris,* 364 A.2d at 591. The fourteenth amendment requires that the state shoulder the burden of proving beyond a reasonable doubt all of the elements of a crime. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This necessarily forbids the state to put the burden of proving the negation of one of those elements on the defendant, for that is but another way of requiring the defendant to disprove an element of the offense.[8] *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

█ In addition to requiring Morris to disprove an element of first degree murder, the jury instructions in Morris's trial imposed conflicting and inconsistent burdens.[9] On the one hand, to secure a conviction the state was required properly to prove beyond a reasonable doubt the intentional elements of the crime of murder and thereby by implication to disprove accident. Morris, on the other hand, was required improperly to prove by a preponderance of the evidence accident and thereby to disprove intent. As in *Guthrie,* the possibility was created that the jury would rely on a presumption of malicious intent, arising from the defendant's failure to prove excuse or justification, in determining that the state had proved its case beyond a reasonable doubt.

However, the Constitution requires that the state affirmatively "create an inference of malice by disproving legal excuse or justification. . . . [T]he trial court's instructions, considered as a whole, erroneously relieved the state of that burden and placed on [Morris] the risk of nonpersuasion as to [accident]." *Guthrie,* 683 F.2d at 826.

█ The possibility that the jury's verdict was based in part on Morris's failure to satisfy this improperly imposed burden of proof is rendered more probable by the confused—and confusing—order of the judge's instructions: after a general instruction on the state's burden of proof, the judge charged the jury first on self-defense, then on the definitions of second degree murder, malice, first degree murder, manslaughter, and finally on the defendant's burden of proving mitigation, justification, or excuse. No specific instruction on accident was given. In essence, the state's argument is that we should focus our attention on the trial judge's correct instruction on the state's burden of proving all the elements of first degree murder, and assume that the jury followed this part of the charge rather than the constitutionally impermissible and logically inconsistent instructions on justification and excuse. However, it is well-established that "when reviewing a charge for constitutional infirmity, the court is required to look at the charge 'in its entirety.'" *Cooper,* 702 F.2d at 483 (citation omitted). While this rule usually is invoked in response to a defendant's desire to concentrate on a single, ail-

---

7. In rejecting Morris's argument on direct appeal, the state court distinguished the *Evans* dictum as limited to "the 'confession and avoidance' type of defense—'Yes, I did it intentionally but I did it for the following excusable reason.'" *Morris,* 364 A.2d at 591. With respect, we do not find the line the Court of Special Appeals has drawn between the justification of self-defense and the excuse of accident tenable. In both cases the defense is a negation of a positive element of the crime. That positive element must be proven by the state. Therefore, the burden of showing its negation logically cannot be put on the defendant.

8. The state, of course, may require a defendant to prove a genuine affirmative defense which does not "negative any facts of the crime which the state is to prove in order to convict [but] constitutes a separate issue." *Patterson v. New York,* 432 U.S. 197, 207, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). However, in the present case the state does not, and cannot, contend accident is an affirmative defense for *Patterson* purposes.

9. Significant internal self-contradiction in a jury charge cannot be harmless error since it is impossible to be certain that the jury followed the correct part of the instructions. *Cooper,* 702 F.2d at 483.

ing section of a charge, it is equally applicable here.

█ The jury charge at Morris's trial "invite[d] reasonable jurors to accept an unconstitutional view of the law," *Cooper,* 702 F.2d at 483, and apply this view in reaching a verdict. For the reasons we have discussed, we conclude that this error rendered the trial fundamentally unfair, and entitles Morris to habeas relief.

## III.

We reverse the district court's judgment and remand the case with directions to issue the writ subject to retrial within a reasonable period to be prescribed by the district court.

REVERSED AND REMANDED.

HALL, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the jury instructions in this case deprived Morris of a fair trial. Morris was convicted of first degree murder and the trial judge's instructions on this charge were adequate. It is true that in instructing the jury with respect to the lesser offenses of second degree murder and manslaughter, the trial judge erroneously referred to a presumption of malice and placed upon the defendant the burden of proving mitigating circumstances. However, in my view, these errors were cured by the jury's verdict of first degree murder. Therefore, I must dissent.

1. As part of his instructions, the trial judge correctly defined the following elements indicating an intent to kill:
   "Willful" is a specific purpose, design or intent to kill. "Deliberate" means the full conscious knowledge of the purpose to kill; and premeditation means that the design or intention to kill must have come before the killing by an appreciable length of time— time sufficient for some reflection and consideration upon the matter, choice to kill or not to kill and for formation of a definite purpose to kill—that is, time enough to be deliberate.

2. The majority opinion concludes that the Court's decision in *Guthrie v. Warden, Mary-*

In instructing the jury in this case on the elements of first degree murder, the trial court correctly placed the burden of proof on the state to show beyond a reasonable doubt that Morris killed his wife "willfully, deliberately and with premeditation and of course with malice aforethought." Specifically, the trial court properly defined reasonable doubt, explained that the state had to establish by proof every fact material to the guilt of the defendant beyond a reasonable doubt, and properly defined the terms willful, deliberate, premeditation, and malice aforethought.[1]

Morris' defense at trial was that he had killed his wife accidentally. Common sense dictates that accident and malice are mutually exclusive. In fact, an accident is the very antithesis of a deliberate act resulting in foreseen and intended consequences. No specific instruction concerning accident was given, nor was one requested. By returning a verdict of first degree murder, the jury, in my opinion, clearly found that the state had sustained its burden of proof beyond a reasonable doubt that Morris killed the deceased in a willful, deliberate, and premeditated manner. In other words, the jury rejected Morris' theory of accident and was satisfied that the state had necessarily disproved this defense beyond a reasonable doubt.[2]

I can only conclude that the jurors in Morris' case did not rely on the erroneous instructions with respect to second degree murder and manslaughter. The evidence overwhelmingly supports the jury's verdict and I am satisfied that the instructions

*land Penitentiary,* 683 F.2d 820 (4th Cir.1982), is dispositive of Morris' appeal. However, the majority distinguishes a portion of the *Guthrie* decision which I find entirely applicable to Morris' claim. In *Guthrie,* the trial judge's instructions on second degree murder and manslaughter had erroneously allocated to the defendant the burden of proof on issues of intoxication and heat of passion. Nevertheless, this court held that the jury had been adequately charged as to first degree murder and that the erroneous intoxication and heat of passion instructions were cured by the jury's verdict of first degree murder. Unlike the majority, I find this portion of the *Guthrie* holding controlling in the instant case.

were not so confusing and that the errors did not so infect Morris' trial as to render his conviction for first degree murder fundamentally unfair. Accordingly, I would affirm the district court's judgment, denying Morris' petition for habeas corpus relief.