Walter A. GUTHRIE, # 117801,
Appellant,

v.

WARDEN, MARYLAND
PENITENTIARY,
Appellee.

No. 81–6783.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1982.

Decided July 6, 1982.

Benson Everett Legg, Baltimore, Md. (Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellant.

Stephen Rosenbaum, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, HALL, Circuit Judge, and MICHAEL,* District Judge.

WINTER, Chief Judge:

Walter H. Guthrie, who was convicted of first-degree murder and sentenced to life imprisonment, appeals from the district court's order denying him a writ of habeas corpus. He attacks the validity of his conviction on the grounds that the jury was unconstitutionally instructed with respect to the elements of the offense and his defenses of intoxication, heat of passion, and self-defense.

Because we think that, read in context, the charge to the jury with respect to the defense of self-defense was constitutionally inadequate, we reverse the order of the district court and direct it to issue the writ

* Honorable James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

unless Guthrie is tried anew within such reasonable period as the district court may fix.

## I.

An extensive recitation of the facts is unnecessary, but we begin with a succinct statement of the background of the case.

On October 13, 1970, petitioner, Walter H. Guthrie, hitchhiked a ride with Merle Aul. Guthrie and Aul proceeded to stop at two taverns where they drank beer and whiskey, apparently to excess. As their journey continued, Aul (according to Guthrie) made homosexual advances which Guthrie rebuffed. Guthrie then formed a plan to escape. He persuaded Aul to stop the car and got out, but when Guthrie sought to remove his luggage, Aul threatened to shoot him if he left. Aul pulled a gun (later proved to be a harmless starter's pistol), left the car and advanced on Guthrie. Guthrie, who could not identify the type of gun deployed by Aul, pulled a knife from his pocket and blocked the gun with one hand, as Aul fired two shots. With the other hand, Guthrie, who testified that he was "scared" and "thought the man was going to kill me," stabbed and killed Aul.

Guthrie pleaded not guilty by reason of insanity, and also entered a general plea of not guilty under which he asserted the defenses of intoxication, heat of passion, and self-defense. The state has conceded that Guthrie's version of the incident was sufficient to generate the issue of self-defense.[1]

---

1. Petitioner's original petition to the district court included various claims unrelated to the jury instructions, *viz.*, that the indictment was faulty, that petitioner was held incommunicado, and that the prosecutor failed to prove motive. Maryland's answer pointed out that petitioner had exhausted state remedies only as regards the jury instructions. In a subsequent memorandum in support of the petition, petitioner acknowledged nonexhaustion as to the other claims and expressly abandoned them. The district court proceeded to adjudicate petitioner's challenge to the jury instructions without referring at all to the abandoned claims.

Approximately eight months after the district court rendered its decision and one month after this appeal was argued, the Supreme Court adopted a rule of "total exhaustion" in *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Under *Rose*, a district court must dismiss any habeas petition which includes both exhausted and unexhausted claims. Arguably, *Rose* demands that we remand this case to the district court with instructions to dismiss the petition even though petitioner expressly abandoned his unexhausted claims and even though the district court adjudicated the exhausted claim before *Rose* was decided. In our view, however, *Rose* does not require that disposition.

Section III–C of the *Rose* opinion notes that a prisoner "can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims." —— U.S. at ——, 102 S.Ct. at 1204. Here, petitioner's explicit abandonment of his unexhausted claims early in the case is functionally equivalent to an amendment of his petition. Like a formal amendment, such an express withdrawal purged the petition of the unexhausted claims. We emphasize, moreover, that in this case, unlike *Rose*, the district court ruled on the exhausted claim without in any way touching on the unexhausted claims.

Section III–C of the *Rose* opinion, upon which we rely, commanded only a plurality. None of the remaining five Justices, however, took a stricter view of the exhaustion requirement than did the plurality. No Justice took issue with the proposition that a prisoner who presents a mixed petition may amend it to exclude unexhausted claims.

Thus, we find nothing in *Rose* to indicate that an appellate court must direct dismissal of a mixed petition where the petitioner abandoned all unexhausted claims early in the case and the district court considered only an exhausted claim and ruled on the matter before *Rose* was decided. Indeed, a contrary view would undermine the *Rose* Court's concern for efficient judicial administration. Dismissal here would, without a doubt, lead the petitioner to file an amended petition—as he has an unquestioned right to do. The district court would thus be required to adjudicate this case a second time. Since there is no reason to believe that the district court would change its opinion of the case, we would expect to face a second appeal months hence. The policies which prevailed in *Rose* do not call for such a burdensome exercise in paper shuffling.

The manner in which petitioner proceeded in this case may entail a significant cost to him. By going forward on his exhausted claims, he may have forfeited the right to revive his withdrawn claims in a subsequent habeas petition. *See Rose*, —— U.S. at ——, 102 S.Ct. at 1204–05 (Section III–C of Justice O'Connor's opinion, joined by Burger, C. J., and Powell & Rehnquist, JJ.). *But see id.* at ——, 102 S.Ct. at 1210–1211 (Brennan, J., joined by Marshall, J., concurring and dissenting). But we, of course, have no occasion to consider this issue.

The jury instructions which Guthrie attacks will be addressed in the sections of the opinion discussing their validity.

## II.

■ The jury was charged with respect to the law of homicide and told that it could return a verdict of guilty of first-degree murder, second-degree murder, manslaughter or not guilty. The jury was then told that "murder is ... the unlawful killing of a human being with malice aforethought," that "[m]alice is ... the intentional doing of a wrongful act to another without legal excuse or justification," and that "[t]he law presumes all unlawful and felonious homicides to be committed with malice aforethought and to constitute murder."

Having laid down a "presumption" that an intentional killing is malicious and therefore constitutes at least second-degree murder, the trial court went on to explain how that presumption could give way to a conviction for first-degree murder or for manslaughter. The court instructed that "to elevate the presumption of second-degree murder to first-degree murder, [the jury] must find that the State has proved beyond reasonable doubt that the murder was willful, deliberate and premeditated or committed in the perpetration of or attempt to perpetrate a robbery." Conversely, the court charged that *the burden is on the accused to reduce the presumption of second-degree murder to manslaughter.* (emphasis added).

In charging as to manslaughter, the trial court told the jury that, "[i]n order for the accused to reduce the presumption of second-degree murder to manslaughter, [the accused must show] to the satisfaction of the jury, that the killing was done in the heat of passion which had temporarily dethroned him of his reason, and which was induced by adequate provocation," and that "the burden of showing that he lost control of his reason because of sufficient provoca-

tion ... is upon the accused." Further, the jury was told that "a person who uses a deadly weapon such as a knife directed at the vital parts of the body of another person is presumed in law to intend the natural and probable consequences of that act."

Finally, with respect to intoxication, the jury was instructed that while voluntary drunkenness is not a defense to crime, the fact of intoxication may be considered by the jury in determining whether the defendant had the particular motive, purpose or intent which is a necessary element of the crime with which he is charged. In this regard, the jury was further instructed that the accused "must persuade ... the jury, that ... he was so intoxicated as to be incapable of entertaining the specific intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted."

These instructions need not concern us long because they were found by the district court to violate Guthrie's constitutional rights, and that conclusion is beyond dispute.[2] Their invalidity plainly appears from a review of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Mullaney* held that it violates due process for a state to impose on one accused of homicide the burden of reducing the charge to manslaughter by proving that he acted in the heat of passion upon sudden provocation. *See* 421 U.S. at 703, 95 S.Ct. at 1892. Under *Sandstrom*, a jury instruction that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts,' " 442 U.S. at 512, 99 S.Ct. at 2453, is unconstitutional whether interpreted as laying down a conclusive presumption or merely a burden-shifting presumption. *Id.* at 524, 99 S.Ct. at 2459. Both *Mullaney* and *Sandstrom* rest on the requirement of the Fourteenth Amendment that the state prove every element of a criminal offense

---

**2.** Indeed, Maryland concedes the invalidity of the instructions concerning heat of passion and directing a deadly weapon at a vital part of the body of another.

beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).[3]

The instructions in the present case included a literal violation of the *Sandstrom* rule, for they informed the jury that one who wields a deadly weapon is "presumed in law" to intend the probable consequences unless he presents sufficient evidence to the contrary. Similarly, the instructions were deficient under *Mullaney* because they imposed on the defendant the burden of negating criminal intent by proving that he acted under the heat of passion or in a state of extreme intoxication.[4]

Although the district court found that these instructions violated Guthrie's constitutional rights, it held on the authority of *Wilkins v. Maryland,* 402 F.Supp. 76 (D.Md. 1975), *aff'd mem.,* 538 F.2d 327 (4 Cir. 1976), *cert. denied,* 429 U.S. 1044, 97 S.Ct. 747, 50 L.Ed.2d 757 (1977), that the errors were cured by the jury's verdict of first-degree murder. We agree. The jury was adequately charged as to the elements of that crime and, "in proving the elements of first degree murder beyond any reasonable doubt in the jurors' minds, the state necessarily disproved manslaughter beyond a reasonable doubt." 402 F.Supp. at 80. As the district court stated:

Judge Hamill [the trial judge], after explaining to the jury the elements of second degree murder, adequately stated how the State could elevate the presumption of second degree murder to first degree. In so doing, he instructed the jury that first degree murder requires proof beyond a reasonable doubt of premeditation and that premeditation exists if "the killing is not the instant effect of impulse, and if there is hesitation or doubt to be overcome, and a choice to be made as a result of thought, however, short * * *." In other words, he instructed the jurors that premeditation requires some, albeit brief, thought before the act. While Judge Hamill's instructions did not specifically distinguish between premeditation and malice aforethought, and did not define malice aforethought with maximum clarity, his instructions made it sufficiently clear that premeditation and malice aforethought are not synonymous.

The instructions concerning intoxication and heat of passion went only to the distinction between manslaughter and second-degree murder. They did not touch on first-degree murder, the offense of which Guthrie was convicted. We therefore conclude that the erroneous intoxication and heat of passion instructions, standing alone, were harmless beyond a reasonable doubt.

**3.** *Mullaney* was given retroactive effect in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). Because *Sandstrom,* like *Mullaney,* vindicates the reasonable doubt standard imposed by the Fourteenth Amendment, it too should be applied retroactively. *See generally Hankerson,* 432 U.S. at 240–44, 97 S.Ct. at 2343–46.

At oral argument, counsel for Maryland suggested that the jury instructions, if erroneous, did not constitute plain error and therefore that petitioner's failure to object to the instructions at trial bars us from considering this case. This argument lacks merit, for the Maryland courts have repeatedly held that Maryland's plain error rule does not preclude a defendant convicted before *Mullaney v. Wilbur, supra,* was decided from mounting a *Mullaney* challenge to the jury instructions rendered by the trial court, notwithstanding that the instructions prompted no objection at trial. *See State v. Evans,* 278 Md. 197, 362 A.2d 629, 637 (1976); *see also Squire v. State,* 280 Md. 132,

368 A.2d 1019 (1977). There has been no procedural default under state law, and we are therefore free to consider constitutional claims which petitioner has raised without success in the Maryland courts. *Compare Engle v. Isaac,* —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), *and Cole v. Stevenson,* 620 F.2d 1055 (4 Cir.), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), *with Baker v. Muncy,* 619 F.2d 327, 329 (4 Cir. 1980).

**4.** Because malice is an element of second-degree murder in Maryland, the state must disprove mitigating factors such as intoxication or heat of passion when they are issues fairly raised by the evidence. *State v. Evans,* 278 Md. 197, 362 A.2d 629, 634 (1976). Accordingly, the holding of *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which permits a state to require the accused to prove affirmative defenses by a preponderance of the evidence, is not applicable here.

## III.

■ We are thus brought to the remaining instruction—that relating to self-defense—the constitutional validity of which Guthrie also challenges. His principal contention is that this charge unconstitutionally placed on him the burden of proving self-defense when, under *Mullaney*, the burden was on the state to disprove it beyond a reasonable doubt.[5]

The charge given was:

If you find that the defendant in this case had reasonable ground to believe, and did in fact believe, that he was in imminent danger of suffering serious injury, or death, at the hands of the deceased at the time he killed him; and if you further find that any reasonable and prudent person similarly situated, with all the attending circumstances, would have believed that he was in imminent danger of suffering serious bodily injury, or death, at the hands of the deceased, then the defendant would be entitled to be acquitted.

The district court did not rule on the validity of this charge. It expressed the view that the instruction "could perhaps have conveyed to the jury that Guthrie had the burden of proving self defense," but it held that any such error was cured by the verdict of first-degree murder.

We disagree with the district court that a verdict of first-degree murder returned after proper instruction as to the elements of that crime renders harmless an invalid instruction on self-defense. The reason for our disagreement is well expressed in *Evans v. State*, 28 Md.App. 640, 349 A.2d 300

(1975), *aff'd*, 278 Md. 197, 362 A.2d 629 (1976), a decision of the Maryland Court of Special Appeals which contains an extensive discussion of the effect of *Mullaney v. Wilbur, supra*, on instructions in homicide cases in Maryland in use at the time that *Mullaney* was decided. The *Evans* court acknowledged, as we have, that defenses of mitigation, such as intoxication and heat of passion, go only to the distinction between second-degree murder and manslaughter, and therefore that an instruction on mitigation which runs afoul of *Mullaney* may be cured by a verdict of first-degree murder. 349 A.2d at 314–16. The court, however, was careful to distinguish between defenses of *mitigation* and those of *justification* or *excuse*, such as a claim of self-defense:

If a fair reading of the instructions indicates that the "presumption of malice," in that broader and unqualified form, operated to relieve the State of its burden of ultimate persuasion on the issue of non-justification and/or non-excuse (where either is a fair issue in the case), *Mullaney v. Wilbur* will require a reversal *regardless of the degree of felonious homicide on which the conviction was had*. Unlike the situation dealt with where the only issue in the case affected by the presumption was mitigation and the only advantage the defendant was denied was the possible lowering of murder in the second degree to manslaughter, the harm on the issues of presumed non-justification and presumed non-excuse operates across the entire spectrum of culpability. If the defendant had had the

---

**5.** Just as the holding of *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), is inapplicable to the Maryland law of mitigation, *see* note 4 *supra*, so it is inapplicable to the Maryland law of self-defense. Self-defense is wholly inconsistent with malice, which is an element of murder in Maryland. Hence, the state must disprove self-defense (where the evidence raises the issue) to establish the element of malice beyond a reasonable doubt as required by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In our view, the due process clause of the Fourteenth Amendment prohibits the prosecutor from shirking this self-imposed burden in particular cases. By asserting that the prosecutor

has effectively done so here, petitioner raises, not merely a point of Maryland law, but rather a federal constitutional claim which, if meritorious, will entitle him to habeas relief. *Compare Baker v. Muncy*, 619 F.2d 327, 331 (4 Cir. 1980) (Virginia law of self-defense), *with Wynn v. Mahoney*, 600 F.2d 448, 451 (4 Cir.) (North Carolina law of self-defense), *cert. denied*, 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979). *See also Engle v. Isaac*, —— U.S. ——, —— & n.23, 102 S.Ct. 1558, 1568 & n.23, 71 L.Ed.2d 783 (1982) (the argument that state prosecutors must disprove self-defense to establish *mens rea*, voluntariness, and unlawfulness is "a colorable constitutional claim").

benefit of a fair allocation of the burden of persuasion on these issues, he might well have been found not guilty totally and not simply guilty to a lesser degree. *Self-defense, for example, would relieve one of guilt for a premeditated and deliberated killing as well as for a killing in hot blood. Id.* at 317 (emphasis added, footnote deleted).[6]

Because self-defense, if proven, exonerates an accused of any degree of culpable homicide, conviction of first-degree murder in no sense cures a self-defense instruction which erroneously places the burden of proof on the accused. *See Wynn v. Mahoney,* 600 F.2d 448, 450 (4 Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979). Thus, we must squarely meet the issue of the validity of the instruction.

The language of the charge with respect to the burden of proof is relatively neutral. We do not accept Guthrie's argument that the phrases "[i]f you find," "if you further find," and "then the defendant would be entitled," standing alone, unmistakably placed the burden of proof on Guthrie. It is not without significance, however, that the trial court probably intended for the burden to be on Guthrie, because that was the law of Maryland at the time Guthrie was tried, *see Squire v. State,* 280 Md. 132,

368 A.2d 1019, 1021 (1977), until the precedents were overruled in *Evans, supra.* Conversely, of course, the language of the charge did not unequivocally tell the jury that the burden of disproving self-defense rested on the state.[7] At the same time, the charges with respect to the mitigation defenses—*i.e.,* heat of passion or extreme intoxication as factors reducing second-degree murder to manslaughter—both told the jury in unmistakable terms that the burden of proof rested on the defendant.[8]

In thus being instructed as to two affirmative defenses that the burden of proof was on Guthrie, the jury likely understood the same burden to be applicable to the defense of self-defense in the absence of a specific charge to the contrary. As we have said, under the Maryland law in effect at the time that Guthrie was tried, now changed, the rule was that the jury should have been told that the burden of establishing the defense rested on Guthrie; and we think that, when the instruction about self-defense is read in the context of the entire charge, the jury was effectively told just that.

As Maryland points out, the jury was told at least five times that the burden was upon the state to prove every element of

---

6. The Maryland Court of Appeals approved this specific holding and overruled contrary precedents. *State v. Evans,* 362 A.2d at 635.

7. If the charge on self-defense was only ambiguous, *United States v. Corrigan,* 548 F.2d 879, 881–84 (10 Cir. 1977), indicates that it was fatally defective. That case recognized that jury instructions regarding self-defense pose a delicate problem requiring extraordinary caution because the defense admits the accused committed the act but seeks to establish justification or excuse. Thus, "[i]n the absence of clear instructions, it is not unlikely that the jury would infer that the government has borne its burden and that it is up to the defendant to establish his justification"; but such an inference "is contrary to the standard of proof beyond a reasonable doubt on all elements of the offense." *Id.* at 883. *See also United States v. Alston,* 551 F.2d 315, 319 (D.C.Cir.1976) (error to omit specific instructions on burden of proof regarding alibi defense). *But cf. Gagne v. Meachum,* 602 F.2d 471 (1 Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979). The *Gagne* court held that *Mullaney v.*

*Wilbur, supra,* does not require "a new trial in every pre-*Mullaney* case in which the jury was not told explicitly that the state had to prove absence of self-defense beyond a reasonable doubt." 602 F.2d at 473 n.4. Even if *Gagne* was correctly decided, it is inapposite here. The result in *Gagne* hinged on the fact that the jury instructions created no impermissible presumption of malice. *Id.* at 473. In Guthrie's case, by contrast, the trial court laid down a presumption that an intentional killing is malicious. The trial court's erroneous charges regarding intoxication and heat of passion further distinguish this case from *Gagne.*

8. The same is true of the charges relating to the presumption that one who wields a deadly weapon intends the probable consequences and that an intentional killing is presumptively malicious and thus presumptively second-degree murder. In each instance the jury was told that the defendant had the burden of disproving intent and malice.

the crime beyond a reasonable doubt.[9] The jury was also told that malice is "the intentional doing of a wrongful act to another without legal excuse or justification." But in our view it does not follow, as Maryland contends, that when the jury found first-degree murder it must have found malice beyond a reasonable doubt and necessarily rejected beyond a reasonable doubt that Guthrie's acts were justified because committed in self-defense. We reject that conclusion because the jury was improperly permitted to rely upon a presumption of malice and was not properly instructed on how to apply the limiting phrase "without legal excuse or justification." Under *Mullaney* and *Sandstrom*, it was incumbent on the state to create an inference of malice by disproving legal excuse or justification. But the trial court's instructions, considered as a whole, erroneously relieved the state of that burden and placed on Guthrie the risk of nonpersuasion as to self-defense.

Accordingly, we reverse the judgment of the district court and remand the case with directions to issue the writ unless Guthrie is retried within such reasonable period as the district court may prescribe.

REVERSED AND REMANDED.

K. K. HALL, Circuit Judge, dissenting:

The trial judge in this case did not give the jury any instructions on the burden of proof of self-defense, yet the majority reads the instructions "as a whole" as casting that burden on Guthrie. I cannot agree that the instructions would in any way have led the jury to conclude that Guthrie had the burden of proof of self-defense, and therefore, I dissent.

The majority emphasizes that the trial judge "probably intended for the burden to be on Guthrie because that was the law of Maryland at the time Guthrie was tried." At 825. I cannot fathom the majority's reliance on the trial judge's silent intentions. The jury certainly would not have known about the state of the law on self-defense until the judge gave his instructions. Unless the jurors in this case were telepathic, they would never have known that the judge may have meant to burden Guthrie with proof of self-defense.

As further support for its conclusion, the majority considers the judge's instructions on the defenses of mitigation, and states,

> In thus being instructed as to two affirmative defenses that the burden of proof was on Guthrie, we think that the jury, in the absence of a specific charge to the contrary, undoubtedly understood the same burden to be applicable to the defense of self-defense.

Slip Op. at 825.

This conclusion is flawed for two reasons: First, the self-defense instructions were given before the instructions on the other mitigating defenses, so, at the time the jurors heard the self-defense instruction, they could not possibly have been influenced by the instructions on mitigation. Secondly, immediately after reading the instruction on self-defense, the judge reminded the jury that the state must prove the defendant guilty beyond a reasonable doubt. Considering this sequence of the instructions, there is no reason to conclude

**9.** It has been argued (1) that, since the instructions on the mitigation defenses came after the self-defense instruction, they could not have affected the jury's understanding of the burden of proof as to self-defense; and (2) that the risk of jury confusion was cured by the general charge as to the state's burden of proof, which came after the self-defense instruction but made no specific reference to the self-defense issue. We note that these arguments are logically inconsistent: If the subsequent instructions as to mitigation could not influence the jury as regards the self-defense claim, then how may a subsequent generalized burden-of-proof charge be deemed to do so? We reject

both arguments, however, for reasons more important than faulty logic. The first argument assumes that the jury could clearly recall the sequence of instructions during its deliberations—an assumption we regard as fanciful. Both arguments view portions of the charge in isolation and thereby contravene the well-established principle that jury instructions are to be read as a whole. Finally, both arguments rest on the mere hope that the flawed instructions did not actually taint the jury's understanding. But a trial error of constitutional magnitude may be excused only if it is harmless beyond a reasonable doubt.

that the jury would have related the instruction on self-defense to anything other than the instruction on the state's burden of proof beyond a reasonable doubt.

In sum, the majority decision is concocted from strained facts and pure fiction. Accordingly, I would uphold the conviction.