**George Wallace MORGAN**

v.

**Thomas R. CORCORAN, et al.**

Civ. No. L–90–3087.

United States District Court,
D. Maryland.

Aug. 13, 1993.

---

George Wallace Morgan, pro se.

J. Joseph Curran, Jr., Atty. Gen. of Maryland and Diane Elizabeth Keller, Asst. Atty. Gen., Baltimore, MD, for respondents.

## MEMORANDUM

LEGG, District Judge.

In this case the Court is called upon to decide the petition for writ of habeas corpus filed by George Wallace Morgan pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court will, by separate order, GRANT Morgan's petition.

## I. *FACTS*

Petitioner George Wallace Morgan is a Maryland prison inmate presently serving a life sentence for first degree murder. He was tried by jury on May 24, 1972 and sentenced on June 29, 1972.

Morgan was found guilty of shooting a man named Clyde Jackson on February 8, 1972 outside of Jack's Liquor Store in Prince George's County, Maryland. At trial, the jury heard testimony that, on the evening in question, Morgan entered Jack's with two of his friends, David Featherstone and Jimmy Tucker.[1] Morgan had a gun. Later that evening, Tucker and Jackson engaged in a verbal altercation. Morgan approached the two, either in an attempt to calm the men down or because he wished to participate in the argument.

Morgan then asked Jackson to step outside for a moment. When Jackson refused to do so, Morgan took out his gun and pointed it at Jackson's side. The two men stepped outside onto the parking lot in front of the liquor store. Less than a minute later, Morgan's gun went off, fatally wounding Jackson. Morgan fled from the scene and was apprehended the following day.

At trial, the government called five witnesses. Joseph Nelson testified that he was a close friend of Jackson's and that he was present at Jack's Liquor Store on the evening Jackson was killed.[2] Nelson further testified that he saw Morgan say "okay buddy, outside," to Jackson, and that Morgan put his gun against Jackson's side as they left the bar.[3] John Davis, who was also present at Jack's that evening, testified that Morgan had a gun.[4] Earl Wright testified that he saw Morgan stick his gun into Jackson's side and that he looked through a window and watched Morgan deliberately shoot Jackson in the face less than a minute after the two men walked out of the store.[5] Two police officers testified that the parking lot in front of Jack's was well lit.

Morgan called two witnesses in his defense and testified on his own behalf. Morgan testified that, after spending most of the evening in the back room at Jack's, he entered the front room and saw Tucker and Jackson arguing. Morgan said that he told the two men to "cool off," and that he asked Jackson to step outside in order to end the argument. When Jackson refused, Morgan took out his gun and placed it against Jackson's side. Morgan testified that shortly after the two men walked outside, Jackson bent over, Morgan felt a pain in his left wrist, and Morgan's gun went off accidently.[6]

Joseph Harty, a medical technician at the Detention Center that Morgan was placed in following his arrest on February 9, testified that Morgan was treated on that day for a minor laceration on his left forearm.[7] David Featherstone testified that Morgan told Jackson and Tucker to "cool it" before Morgan asked Jackson to step outside. He also testified that he saw Morgan at Morgan's girlfriend's "place" after the shooting, and that Morgan's girlfriend was treating a cut in Morgan's arm at that time.[8]

In rebuttal, the state called police detective Michael Ariemma, who arrested and strip searched Morgan on February 9. Ariemma testified that he did not see a laceration on Morgan's arm.[9]

At the close of the evidence, the judge instructed the jury that the defendant in a criminal case is presumed innocent and that the burden is on the state to prove his guilt beyond a reasonable doubt.[10] The judge further instructed the jury that:

> [u]pon proof by the State of an unlawful killing with nothing else, the presumption is that it is murder in the second degree. The state then has the burden of proving

1. Trial transcript at 116.

2. Transcript at 13.

3. Transcript at 16.

4. Transcript at 56.

5. Wright also testified that Morgan was at the bar in the front part of the store near Tucker and Jackson the whole evening. This testimony contradicts testimony given by Davis, Morgan, and David Featherstone that Morgan was in the back

of the store (the back of the store is a separate room with a lounge area) for most of the evening. Transcript at 55, 90, 117, 136.

6. Transcript at 138–140.

7. Transcript at 112.

8. Transcript at 119.

9. Transcript at 157.

10. Transcript at 162.

beyond a reasonable doubt the elements of the crime which would raise the degree to murder in the first degree ... the defendant has the burden by a preponderance of the evidence of showing elements which would reduce the felonious and unlawful killing from second degree to manslaughter, or showing that the killing was justifiable or excusable and therefore that the verdict should be not guilty ...

You must have malice in murder but not in manslaughter. Malice is defined in this connection as the intentional doing of a wrongful act to another without legal excuse or justification. Malice may be inferred by the pointing of a dangerous weapon at a crucial part of the body.[11]

The jury returned its guilty verdict one and one-half hours after receiving these instructions.

## II. *PROCEDURAL HISTORY*

Morgan appealed his conviction to the Maryland Court of Special Appeals, challenging the sufficiency of the evidence and the jury instructions at his trial. The Court of Special Appeals affirmed, finding the evidence sufficient to warrant conviction and the jury instructions adequate. The Maryland Court of Appeals denied Morgan's certiorari petition in 1973.

Morgan filed a petition for postconviction relief with the Circuit Court for Prince George's County in 1975. The Court found that the trial judge's instruction to the jury concerning the defendant's burden of proving facts which would reduce the crime from murder to manslaughter was erroneous. The Court found the error to be harmless, however, because it found no evidence of justification, mitigation, intoxication, accident, or mistake in the record.[12] Morgan's application for leave to appeal the decision to the Court of Special Appeals was denied in February, 1977.[13]

In 1977, Morgan filed a petition for a writ of habeas corpus in this Court which challenged the trial judge's jury instructions and alleged that Morgan was temporarily insane at the time of the shooting. Judge Herbert Murray denied the petition.[14]

In 1983, Morgan filed a second petition for relief in the Circuit Court for Prince George's County, challenging the trial judge's malice and burden of proof instructions. The court denied the petition in 1985. Morgan's application for leave to appeal was denied.

In 1990, Morgan, proceeding *pro se*, filed a second habeas petition in this Court, again challenging the trial judge's malice and burden of proof instructions. Morgan's petition was referred to Magistrate Judge Catherine C. Blake for a report and recommendation, which was completed on November 12, 1991. Morgan filed objections to the report and recommendation on November 27, 1991. Pursuant to Fed.R.Civ.P. 72(b), the Court reviews the magistrate's report and recommendation *de novo*.

## III. *DISCUSSION*

### A. *Abuse of Writ/Successive Petition*

Because this is Morgan's second federal habeas petition, the Court must determine whether it is procedurally barred from conducting a substantive review of the petition. The State of Maryland contends that Morgan's petition is barred by 28 U.S.C. § 2244(a) and Habeas Rule 9(b). Rule 9(b) provides, in pertinent part, that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits."

 Under *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963), a successive petition may be dismissed only if the following criteria are satisfied: (i) the ground presented in petitioner's second habeas was determined adversely to petitioner in his first habeas; (ii)

---

11. Transcript at 162, 165–66.

12. Exhibit 5.

13. Exhibit 6.

14. Memorandum and Order dated 9/12/77. Civil No. HM77–1107. Judge Murray found that Morgan failed to exhaust his state remedies with respect to his temporary insanity claim, and denied the claim without prejudice.

the prior determination was on the merits; and (iii) the ends of justice would not be served by reaching the merits of the second petition. Subsequent petitions are deemed to warrant reconsideration when the petitioner establishes either that he was not afforded a full and fair hearing with respect to his prior petition, or that an intervening change in the law has occurred since the time of the first petition. *Sanders* at 16–17, 83 S.Ct. at 1077–78.

■ In his first federal habeas petition, Morgan argued that: (i) the judge's instruction to the jury that "malice may be inferred by the pointing of a dangerous weapon at a crucial part of the body" was unconstitutional; (ii) the jury instruction placing the burden of proof on him to reduce the crime to manslaughter was unconstitutional; and (iii) he was temporarily insane at the time of the killing.

In his 1977 Memorandum & Order, Judge Murray reasoned that "upon the jury finding the petitioner guilty of first degree murder, the state necessarily proved all elements of first degree murder. Any misallocation of the burden of proof on the issue of manslaughter would therefore not have affected the jury's decision ... Any error in that respect therefore was harmless error." Thus, Judge Murray considered the merits of petitioner's burden-shifting claim, and this Court may review that issue only if intervening law sheds new light on the subject.

The Court finds that there has been no intervening change in the law since 1977 that would lead this Court to question Judge Murray's decision with respect to the jury instructions that shifted the burden of proof with respect to mitigating factors to Morgan. The Fourth Circuit cases cited by Morgan, which he contends represent "new law" on the issue of burden-shifting presumptions, are inapposite to the instant action.

The first, *Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820 (4th Cir.1982), involved a defendant who contended at trial

that he had killed a man in self-defense. The Court reasoned that, "[b]ecause self-defense, if proven, exonerates an accused of *any* degree of culpable homicide, conviction of first-degree murder in no sense cures a self-defense instruction which erroneously places the burden of proof on the accused." *Id.* at 825 (emphasis added). The Court recognized that, in cases in which a defendant did not present a defense that would be a complete defense to homicide, instructions that shifted the burden of proof regarding mitigating factors would be harmless error. Because such instructions only address "the distinction between manslaughter and second-degree murder," they are cured by a first degree murder conviction. *Id.* at 826.

Unlike Guthrie, Morgan does not contend that his trial defense represented a complete defense to homicide.[15] Instead, as he recognizes, his trial defense was a partial defense to homicide.[16] Thus, *Guthrie* affords Morgan no assistance in his present petition. Similarly, *Morris v. State of Maryland,* 715 F.2d 106, 107 (4th Cir.1983), involved a defendant who presented a complete defense to homicide (pure accident) at trial. Although Morgan contends that his gun fired accidently, Morgan concedes that the "accident" took place during the course of otherwise unlawful activity and did not constitute a complete defense to homicide. Thus, Morgan cites no cases to this Court that require the Court to reopen the previously litigated issue of the constitutionality of the trial judge's instructions regarding mitigating factors and manslaughter.

In contrast to the murder/manslaughter issue, however, Judge Murray did not address Morgan's contention that the trial judge's malice instruction was constitutionally infirm. Thus, Morgan's second petition is not successive with respect to Morgan's malice claim because the merits of his argument concerning the malice instruction were not addressed by the Court in his prior petition.

**15.** Morgan's Objection to Report & Recommendation at 1.

**16.** Morgan's defense would, however, constitute a complete defense to *murder.* Under Maryland

law, an unintentional killing that takes place during the course of otherwise unlawful activity constitutes involuntary manslaughter.

*See Sanders* 373 U.S. at 16–17, 83 S.Ct. at 1077–78.

Morgan's malice claim also is not an abuse of the writ, *see* Habeas Rule 9(a), because Morgan raised the malice issue in his first federal habeas petition.[17] Judge Murray did not expressly state whether he viewed Morgan's malice argument as an unexhausted claim, but he did not address the substance of the claim in his opinion.

Morgan's malice claim was, in fact, unexhausted in 1977 because Morgan had never asserted the claim in a state court proceeding. On July 7, 1983, in his Petition for Post–Conviction Relief in the Circuit Court for Prince George's County, Maryland, Morgan alleged, *inter alia,* that "his rights under the Due Process Clause of the Fourteenth Amendment ... were violated [by] ... the State's instruction that ... [m]alice may be inferred by the pointing of a dangerous weapon at a crucial part of the body." [18] In an Opinion & Order filed on July 15, 1985, the court considered the merits of Morgan's contention. In denying Morgan's petition, the court reasoned that "[t]he instruction in the instant case was that 'malice may be inferred', which is a permissible instruction under *Sandstrom.*" [19]

▆ Thus, Morgan's malice claim is best construed as a previously unexhausted claim, which is now exhausted and ripe for review on federal habeas. Moreover, despite Morgan's failure to raise the malice issue at trial or in his direct appeal or first state postconviction proceeding, the claim is not procedurally barred. Although failure to make a contemporaneous objection at trial to a jury instruction will ordinarily preclude consideration of the instruction in federal habeas, a State court's failure to apply this procedural bar removes any impediment by a federal habeas court to consideration of the matter. *Johnson v. Maryland,* 915 F.2d 892, 895 (4th

Cir.1990); *Baker v. Muncy,* 619 F.2d 327, 329 (4th Cir.1980). Because "the decision of the last state court to which petitioner presented his federal claims" addressed those claims rather than finding them procedurally barred, the Court may address the merits of Morgan's petition. *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2255–57, 115 L.Ed.2d 640 (1991).

Finally, even assuming *arguendo* that the merits of Morgan's malice argument were reached by Judge Murray, the Court finds that consideration of Murray's second habeas petition is warranted under *Sanders* because there have been intervening changes in the law concerning jury instructions regarding malice. *See* discussion *infra.* Moreover, the case law developed by the Supreme Court in this area since 1977 is fully retroactive. *Yates v. Evatt,* — U.S. —, —, 111 S.Ct. 1884, 1890, 114 L.Ed.2d 432 (1991). Thus, the Court will proceed to consider the merits of Morgan's malice claim.

### B. *Malice Claim*

▆ As the Court noted earlier, Morgan contends that the trial judge's jury instruction concerning malice (that "malice may be inferred by the pointing of a dangerous weapon at a crucial part of the body") was constitutionally infirm because it removed from the State the burden of proving an essential element of the crime for which he was convicted and may have had a coercive effect on the jury's decision-making process. In other words, Morgan contends that the trial judge's malice instruction allowed the jury to base its verdict in part upon an inference or presumption of malice rather than on evidence introduced by the government with respect to this critical element of murder. Because the issue of Morgan's intent at the time of the shooting was the only contested question during his trial, and because Morgan alleges that there was little, if

---

17. Because Morgan's first petition was filed prior to the Supreme Court's decision in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), Judge Murray considered Morgan's exhausted claim and dismissed his unexhausted claim without prejudice, rather than dismissing the entire petition. Had Morgan's habeas petition been filed after 1982, it would have been dismissed without prejudice in its entirety, and

there would be no procedural bar to this Court's consideration of Morgan's claims.

18. Pleading # 12. Petition at 5.

19. Pleading # 12. Opinion & Order of Court at 2.

any, evidence of malice adduced by the government at trial, Morgan contends that the trial judge's jury instructions rendered his trial fundamentally unfair.

Morgan's contention is grounded in a line of Supreme Court cases dating back to *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), which held that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." The Supreme Court has applied the holding in *Winship* to potentially coercive jury instructions in a number of cases, most notably *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), and, more recently, *Yates v. Evatt.*

The Supreme Court recognizes that "[i]nferences and presumptions are a staple of our adversary system of factfinding," and that "[i]t is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *Allen*, 442 U.S. at 156, 99 S.Ct. at 2224. The Court has determined, however, that the use of these decision-making devices in criminal trials is limited by the constitutional requirement that the state prove every element of the crime charged beyond a reasonable doubt. Thus, the Court has concluded that, "in criminal cases, the ultimate test of any device's validity ... [is whether] the device ... undermine[s] the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a

reasonable doubt." *Id.; see also Franklin*, 471 U.S. at 313, 105 S.Ct. at 1970 (the "bedrock, axiomatic, and elementary constitutional principle" enunciated in *Winship* "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.") (citation omitted).[20]

As the Court noted in *Sandstrom*, "the threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. That determination requires careful attention to the words actually spoken to the jury," *Sandstrom*, 442 U.S. at 514, 99 S.Ct. at 2454, for whether a defendant has been accorded his constitutional rights depends upon whether "there is a reasonable likelihood that the jury ... applied the challenged instruction in an unconstitutional fashion." *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).[21] In other words, the first task for this Court is to determine the degree of coercion inherent in the trial judge's instruction that "malice may be inferred by the pointing of a dangerous weapon at a crucial part of the body."

In *Allen*, the Supreme Court delineated three categories of inferences or presumptions. The first category includes "the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." 442 U.S. at 157, 99 S.Ct. at 2224. The second type of presumption is a mandatory rebuttable presumption, which

---

**20.** The Court notes that this reasoning applies only to elements of the crime that the government is required to prove in its affirmative case. It does not apply to affirmative defenses, such as insanity, that are not elements of the crime charged and with respect to which the defendant may permissibly bear the burden of proof. *See Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

**21.** *Boyde* altered the standard of review in cases involving potentially unconstitutional jury instructions. Before *Boyde*, the Supreme Court

directed lower courts to ask whether a reasonable juror *could* have interpreted the instruction in an unconstitutional fashion. *See, e.g., Franklin*, 471 U.S. at 315–316, 105 S.Ct. at 1971–1972; *Sandstrom*, 442 U.S. at 516–517, 99 S.Ct. at 2455–2456. The new test requires a defendant "to demonstrate more than a reasonable 'possibility' that his jury was 'impermissibly inhibited by the instruction,'" but a defendant need not establish that " 'the jury ... more likely than not' was misled." *Boyde*, 494 U.S. at 394, 110 S.Ct. at 1205 (Marshall, J., dissenting).

"tells the trier that he or they *must* find the elemental fact upon proof of the basic fact ... unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." 442 U.S. at 157, 99 S.Ct. at 2225. (emphasis in text). This type of presumption has been divided into two subcategories: (i) presumptions that shift the burden of *producing* contrary evidence to the defendant; and (ii) presumptions that shift the burden of *persuasion* on an issue to a defendant. The third type of presumption is a mandatory conclusive presumption, which dictates a jury finding on an issue.

The four types of presumptions are analyzed on a sliding scale, with the Court most suspicious of mandatory conclusive presumptions and least suspicious of permissive presumptions. In effect, the Court has adopted a line of analysis concerning presumptions in jury instructions that is analogous to the rational basis/middle tier scrutiny/strict scrutiny approach utilized in equal protection cases.[22] The most difficult and problematic cases in this area concern presumptions that fall in the "middle tier" of scrutiny.[23]

Thus, the critical question before the Court is whether the jury instruction concerning malice in this case created a permissive presumption or some type of mandatory presumption. The exact instructions at issue in this case were analyzed extensively in *Dickey v. Lewis*, 859 F.2d 1365, 1369 (9th Cir.1988), in which the Court concluded that the instruction in question fell somewhere between a permissive presumption and a mandatory presumption. The Court reasoned that:

> The State argues that use of the word "may" before "presume" distinguishes this case from *Sandstrom* and allows, but does not require, the jury to reach a particular conclusion on the ultimate fact.

Despite the semantic appeal of the State's argument, we must conclude that the challenged instruction displays the same basic infirmity found in the instruction rendered unconstitutional by the *Sandstrom* court. A juror here might reasonably have interpreted the permissive language (i.e., "may") as mandatory, and consequently, could have impermissibly relied upon a presumption similar to the one condemned in *Sandstrom*.

The Court in *Sandstrom* accepted the fact that some jurors could have interpreted the challenged instructions as permissive. The first essential inquiry, however, is whether a "reasonable juror" *could* have viewed the presumption as conclusive or burden-shifting. We conclude, as a threshold matter, that a reasonable juror could have interpreted "you may presume" in a burden-shifting manner. *Id.*

*See also Sturgis v. Goldsmith*, 796 F.2d 1103 (9th Cir.1986) (constitutional objection to instruction virtually identical to that at issue here "states a colorable claim for habeas relief under the due process clause"). Because instructions identical to those at issue in this action have not yet been considered

---

**22.** The test of the constitutionality of a entirely permissive presumption is whether, "under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Allen*, 442 U.S. at 157, 99 S.Ct. at 2225. As the Court explained in *Allen*, "only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." *Id.* The test concerning a mandatory rebuttable presumption that shifts the burden of production to a defendant is unclear. With respect to mandatory rebuttable presumptions that shift the burden of persuasion to a defendant, the Court has concluded that such presumptions are unconstitutional unless evidence of guilt is so overwhelming that the error can be deemed harmless. *Franklin*, 471 U.S. at 307, 105 S.Ct. at 1965; *Yates*, —— U.S. at ——,

—, 111 S.Ct. at, 1891, 1892. Finally, mandatory conclusive presumptions are rarely utilized and are generally deemed unconstitutional under any circumstances.

**23.** The Fourth Circuit generally finds mandatory presumptions that shift a burden of production to be constitutionally permissible and those that shift the burden of persuasion to be constitutionally problematic. *See Rook v. Rice*, 783 F.2d 401, 405 (4th Cir.1986). It is extremely difficult, if not impossible, however, for a court to distinguish between the two categories of mandatory rebuttable presumptions. Moreover, recent Supreme Court precedent suggests that language previously thought to shift only a burden of production may be understood by jurors to shift a burden of persuasion. *See Yates*, —— U.S. at ——, 111 S.Ct. at 1892.

by the Supreme Court or the Fourth Circuit,[24] the Court adopts the reasoning of *Dickey* and finds that Morgan has set forth a "colorable claim" for habeas relief under the Due Process Clause.

The Court recognizes that the Ninth Circuit's reasoning in *Dickey* relied, to some extent, on the *Franklin* test of whether a reasonable juror "could have" interpreted the instruction improperly, rather than the new *Boyde* test of whether there is a there is a "reasonable likelihood" that the jury interpreted the instruction in an unconstitutional fashion. Based on an analysis of the language of the malice instruction given at Morgan's trial in the context of other problematic instructions given to the jury, however, the Court concludes that there was a reasonable likelihood that the jury that convicted Morgan interpreted the malice instruction as relieving the government of its burden of proof with respect to the critical and disputed issue of Morgan's intent.

As the *Dickey* court recognized, a court reviewing challenged jury instructions must "review the constitutionality of [the] particular instruction in [the] context of the instructions as a whole." *Id.* (emphasis deleted). The Court's review of other portions of the trial judge's instructions lend further support to the Court's conclusion that the malice instructions the jury received during Morgan's trial were constitutionally problematic.[25] First, the malice instructions were given in the context of other instructions which created a mandatory presumption of second degree murder and which explicitly shifted the burden of proof to the defendant with respect to mitigating circumstances that could reduce the crime to manslaughter. The jury was told that, "[u]pon proof by the State of an unlawful killing with nothing else, the presumption *is* that it is murder in the second degree," (emphasis added),[26] and was instructed that the defendant had the burden of proving those factors, such as heat of passion, that could reduce the crime to manslaughter. Thus, the malice instruction was part of an overall instruction that explicitly shifted the burden of proof to Mr. Morgan, and that created a mandatory presumption of second degree murder upon proof of an unlawful killing.

By informing the jury that "you must have malice in murder," and then instructing the jury to presume that Morgan was guilty of second degree murder upon proof of an unlawful killing, the trial judge effectively di-

**24.** In *Peterson v. Murray*, 904 F.2d 882, 888 (4th Cir.1990), the Court considered the constitutionality of the following jury instruction:

You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed.

Although this instruction is similar to the instruction at issue in this action, it is not identical to it. Moreover, the use of qualifying language in the *Peterson* instruction, as well as other elements of the trial judge's instructions which emphasized that there was no burden on the defendant to produce any evidence, *see* 904 F.2d at 888, distinguish it constitutionally from the instruction given at Morgan's trial.

**25.** In another portion of the jury charge, the judge stated:

The law further provides that all other kinds of murder than murder in the first degree shall be deemed murder in the second degree. *Upon proof by the State of an unlawful killing with nothing else, the presumption is that it is murder in the second degree.* The State then has the burden of proving beyond a reasonable doubt the elements of the crime that would raise the degree to murder in the first degree.

The burden rests upon the State in this respect. That is, the State must prove beyond a reasonable doubt that the murder was deliberate, wilful, and premeditated. The defendant has the burden by the preponderance of the evidence of showing elements which would reduce the felonious and unlawful killing from second degree to manslaughter, or showing that the killing was justifiable or excusable and therefore that the verdict should be not guilty.

If you are convinced from the evidence that the death resulted from merely unlawful conduct on the part of the defendant and there was no intent to take a life, then in that case, the defendant would be guilty of manslaughter. *The essential difference between murder and manslaughter is the presence of malice. You must have malice in murder but not in manslaughter.* (emphasis added). Transcript at 164–166.

**26.** This instruction is an incorrect statement of Maryland law. Under Maryland law, proof of an unlawful killing, without more, constitutes proof of involuntary manslaughter. *Evans v. State*, 28 Md.App. 640, 349 A.2d 300, 320 (1975). The correct statement of law is that "all *murder* will be presumed to be murder in the second degree." *Id.* 349 A.2d at 325 (emphasis added).

rected a verdict with respect to the issue of malice in Morgan's case.[27] Thus, although the judge's instruction concerning the presumption of malice from the use of a deadly weapon could be viewed in isolation as creating only a permissive presumption, the instruction takes on a mandatory quality when viewed in the context of the other instructions the jury received.[28]

In addition, as the *Dickey* court noted, there were no instructions following the malice instruction that directly qualified it. As a result, the Court "cannot conclude, with any certainty, that the trial court reduced the impact of the potentially burden-shifting instruction." *Id.* at 1370 (comparing cases in which judge qualified erroneous instruction with language reaffirming the jury's power to independently assess the facts). Finally, the fact that other, general burden of proof instructions were given to the jury does not vitiate the potentially coercive effect of the instructions at issue here. *See Sandstrom,* 442 U.S. at 519 n. 7, 99 S.Ct. at 2456 n. 7.

Thus, based on an analysis of the language of the specific jury instruction at issue in the instant case and an analysis of the challenged instruction within the context of the trial judge's instructions as a whole, the Court concludes that the malice instruction given to the jury at Morgan's trial was unconstitutional because it effectively shifted the burden of proof on the issue of intent to Morgan and removed the burden of proving an element of the crime from the government.

In the alternative, the Court finds that the instruction to the jury that "[u]pon proof by the State of an unlawful killing with nothing else, the presumption is that it is murder in the second degree," constituted a mandatory conclusive presumption violative of *Sandstrom* and *Franklin.* As discussed *infra,* the instruction directed a verdict with respect to the element of intent and removed from the government the burden of proving every element of murder. In effect, the instruction required the jury to presume Morgan guilty of second degree murder upon proof of the simple fact that Jackson was killed, a fact that no one contested at trial. Thus, the instruction made it difficult, if not impossible, for the jury to consider Morgan's defense of lack of intent.

## C. Harmless Error Analysis

■ The next step in the Court's analysis is an inquiry into whether "the unconstitutional ... instruction could have affected the verdict or was, rather, harmless error." *Dickey* at 1370.[29] As the Supreme Court explained in *Yates,* the issue before the Court is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." — U.S. at ——, 111 S.Ct. at 1892.[30] In making this determination, the Court must "ask what evidence the jury actually considered in reaching its verdict." *Id.* — U.S. at ——, 111 S.Ct. at 1893. The Court must then "weigh the probative force of that evidence as against the probative force of the presumption standing alone." *Id.*

27. Malice is an element of second degree murder in Maryland. *Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820, 823 n. 4. (4th Cir.1982).

28. Moreover, the trial judge's instructions were confusing and internally contradictory, at one point instructing the jury to presume second degree murder "[u]pon proof by the State of an unlawful killing with nothing else," and at another point telling the jury that "[i]f you are convinced by the evidence that the death resulted from merely unlawful conduct ... and there was no intent to take a life, then in that case, the defendant would be guilty of manslaughter."

29. Although erroneous instructions with respect to mitigating factors constitute harmless error in cases in which a defendant is convicted of first degree murder, *see,* e.g., *Guthrie* at 826, errone-

ous instructions with respect to intent are not automatically cured by a first degree murder conviction. Unlike erroneous jury instructions restricted to the distinction between second degree murder and manslaughter, erroneous instructions regarding intent (defined in Maryland as an aspect of the umbrella term "malice") infect a conviction for any degree of homicide. *See Evans v. State,* 28 Md.App. 640, 349 A.2d 300, 320, 325 (1975); *see also Dickey* at 1367, 1370–71 (defendant convicted of first degree murder; court examined facts of case to determine if erroneous instructions regarding intent constituted harmless error).

30. Although *Estelle v. McGuire,* — U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), criticized *Yates* in some respects, it did not overturn *Yates's* harmless error analysis.

The Court has reviewed the entire transcript of Morgan's trial and the testimony of each witness who testified therein. The Court concludes that little or no evidence of malicious intent was offered by the prosecution at trial. There was no evidence of a motive on Morgan's part to kill Jackson, and, to the contrary, the evidence revealed that Morgan had never met Jackson before the night he shot him. Moreover, the evidence revealed that Jackson was shot moments after the two men had met and Morgan asked Jackson to step outside of Jack's Liquor Store.

The Court also finds that Morgan's intent was the only disputed issue at his trial, and that Morgan testified that he did not intend to kill Jackson. Morgan testified that Jackson cut his wrist with a knife and that his gun accidently went off, killing Jackson, and Morgan presented witnesses who corroborated his version of the facts.

The evidence of intent in this case is comparatively weak when viewed in the context of cases in which courts have concluded that evidence of intent was overwhelming. In *Gaskins v. McKellar*, 916 F.2d 941, 944, 952 (4th Cir.1990), for example, the Fourth Circuit concluded that "the jury would have found it unnecessary to rely on [a malice] presumption," because evidence at trial revealed that "after numerous failed attempts to poison [the victim], Gaskins resolved to kill [him] by means of an explosive device." Evidence adduced at trial also revealed that Gaskins had numerous conversations with other individuals in which he announced his intent to kill the victim. *Id.* Similarly, in *Davis v. Allsbrooks*, 778 F.2d 168, 174 (4th Cir.1985), the court concluded that "the proven facts of this case, showing a brutal and vicious murder, clearly allow the presumption of malice." The woman Davis murdered suffered seven or eight stab wounds, "some as deep as five or six inches," a broken neck, a bruised face, and slashed wrists. *Id.* at 169.

In contrast to *Gaskins* and *Davis*, there is no evidence in this case of either a brutal murder or a planned execution. In fact, this case bears a strong resemblance to *Yates*, in which the Supreme Court concluded that the

"record simply is not clear on [the petitioner's] intent to kill the victim." In *Yates*, which involved a homicide during an armed robbery, the critical issue at trial was intent. Like Morgan, the petitioner testified on his own behalf and contended that "he had brought a weapon with him only to induce the store owner to empty the cash register," and that he never intended to kill anyone. *Yates*, —— U.S. at ——, 111 S.Ct. at 1889.[31] This case also resembles *Franklin*, in which the petitioner admitted he killed the victim but contended that his gun simply "went off" and that the killing was neither voluntary nor intentional. 471 U.S. at 310–311, 105 S.Ct. at 1969–1970.

The Court finds that the jury would have considered Morgan's testimony and corroborating witnesses, as well as the testimony of the government witnesses. The Court also believes that the evidence of intent in the government's case was far from overwhelming, and that Morgan presented a credible defense on the issue of intent. Thus, the Court cannot state with any confidence that "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Yates*, —— U.S. at ——, 111 S.Ct. at 1892. Because the Court cannot conclude "beyond a reasonable doubt that the presumption did not contribute to the jury's findings," the Court finds that Morgan's trial was rendered fundamentally unfair by jury instructions that deprived him of his right to due process under the Fourteenth Amendment. *See Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.1982). Accordingly, the Court will grant Morgan's petition.

---

**31.** The petitioner in *Yates* was charged with murder as an accomplice.