**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-7491**

---

DAVID M. FRIZZELL,

        Petitioner – Appellant,

      v.

CHADWICK DOTSON, Director, Department of Corrections,

        Respondent – Appellee.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James P. Jones, Senior District Judge. (7:20-cv-00685-JPJ-PMS)

---

Argued: September 26, 2024            Decided: December 17, 2024

---

Before NIEMEYER, Circuit Judge, FLOYD, Senior Circuit Judge, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by unpublished opinion. Judge Bell wrote the majority opinion, in which Judge Niemeyer joined. Judge Floyd wrote a dissenting opinion.

---

**ARGUED:** David Benjamin Smith, DAVID B. SMITH, PLLC, Alexandria, Virginia, for Appellant. Liam Alexander Curry, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Jason S. Miyares, Attorney General, Charles H. Slemp, III, Chief Deputy Attorney General, Donald E. Jeffrey, III, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BELL, District Judge:

In 2016, a Virginia state court jury convicted David Frizzell of the attempted capital murder of a police officer and the use of a firearm in the commission of a felony. At trial, Frizzell's sole defense was that he was too intoxicated from alcohol and marijuana to form the premeditation necessary to be convicted. Following an unsuccessful appeal, he filed a pro se habeas petition with the Virginia Supreme Court, in which he alleged numerous claims of ineffective assistance of counsel. When that petition was dismissed, he filed a petition under 28 U.S.C. § 2254 in federal district court, asserting new ineffective assistance of counsel claims.

Specifically, he alleged that his counsel was ineffective in failing to object to or request curative instructions in response to the prosecutor making several statements in his rebuttal closing argument that Frizzell claimed impermissibly shifted the burden of proof to him on (1) intent, and (2) voluntary intoxication as a defense to premeditation. Further, he argued that the court should consider the cumulative prejudicial effect of counsel's errors. The district court dismissed the petition, and declined to issue a certificate of appealability, finding that all but one of the claims were not "substantial" under *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), and that cumulative prejudice analysis in this context is impermissible. With respect to the lone claim the district court found to be substantial – Frizzell's claim concerning the prosecutor's allegedly improper argument on the intoxication defense – it later dismissed that claim on the merits, finding that Frizzell had not been prejudiced under the governing standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Frizzell timely appealed.

3

As explained herein, we conclude that Frizzell's claims related to trial counsel's failure to object to the prosecutor's rebuttal arguments allegedly shifting the burdens of proof on intent and voluntary intoxication are insubstantial under *Martinez*, and thus still subject to procedural default because they were not raised in state court. Additionally, this Court has long held that cumulative prejudice analysis is not available for ineffective assistance of counsel claims. As such, we AFFIRM the district court's ruling.

## I.    BACKGROUND

### a.    Factual History

David Frizzell is a retired air force veteran and police officer. After retiring from police work, he grew depressed and began drinking. On October 30, 2015, Pittsylvania County Deputy Sheriff Jason Woods responded to a report that a white SUV was doing doughnuts in the grass at a park. Based on the description of the driver and vehicle in the report, Woods surmised that it was David Frizzell, with whom Woods was familiar from previous interactions. Woods located and followed the SUV, which was being driven by Juanita Haley, Frizzell's then girlfriend (who also happened to be Woods' former landlord). Frizzell was sitting in the back, and another man, later identified as Steven Holland, sat in the front passenger seat.

The SUV and Woods' patrol car ultimately pulled off the road. Frizzell got out of the car, grabbed Haley's arm, and pulled her out of the driver's seat, ignoring Woods' commands to get back in the vehicle. Haley pulled away from Frizzell and rushed up to Woods, telling him, "I don't know what's wrong with him. He's drunk." Haley later

4

testified that Frizzell had consumed a bottle of Jim Beam and smoked marijuana that day. Woods ordered Frizzell to step away from the vehicle, noticing that Frizzell had a beer in his hand, a "blank" expression, and bloodshot eyes.

Frizzell moved away from the SUV and began to walk toward Woods, ignoring Woods' commands to stop approaching. When Frizzell was within approximately six feet of Woods, Woods tased him. Tased but unfazed, and still holding his beer, Frizzell began backing away toward the SUV. He put his free hand in his pocket and according to testimony from Woods and Holland, either stated, "Jason, you've done fucked up now," or "Jason, don't fuck up now, brother."

Woods drew his gun and ordered Frizzell to remove his hand from his pocket four or five times. Frizzell did not comply, and after about eight seconds pulled a revolver out of his pocket. He aimed at Woods and fired until the revolver was empty, pulling the trigger between three and five times. Woods returned fire, hitting Frizzell in the thigh, before dropping his service weapon and seeking cover nearby. Frizzell, meanwhile, tossed his gun into the SUV, and stood beside the car with his leg bleeding, drinking his beer.

Backup arrived and ordered Frizzell to get on the ground with his hands in the air. Frizzell did not respond to the commands other than to say, "Do you know who I am?" Ultimately, Frizzell was tased again, causing him to fall to the ground. After fighting cuff placement and being tased for a third time, he became compliant. Frizzell was then transported to the hospital for medical treatment, where he tested positive for marijuana and his blood alcohol level was measured at 0.20%.

5

b.  Procedural History

After a three-day jury trial, Frizzell was found guilty of attempted capital murder of a police officer and use of a firearm in the commission of a felony. The jury recommended a sentence of twenty-three years imprisonment, the lowest they could recommend based on the convictions.[1] At sentencing, the trial court adopted the recommendation and sentenced Frizzell to twenty-three years in prison.

Frizzell directly appealed his conviction, alleging that the trial court erred in denying his motion to suppress, excluding expert testimony about his ability to premeditate, and in declining to give three jury instructions he requested. The Virginia Court of Appeals affirmed the convictions, and the Supreme Court of Virginia denied review.

Frizzell next filed a pro se petition for habeas corpus in the Supreme Court of Virginia, alleging numerous claims of ineffective assistance of counsel. Two months after Frizzell filed his petition, an attorney entered an appearance on Frizzell's behalf, but moved to withdraw after the State moved to dismiss Frizzell's petition. The court allowed the attorney to withdraw, and six months later dismissed Frizzell's habeas petition.

Frizzell then filed a 28 U.S.C. § 2254 petition with the United States District Court for the Western District of Virginia, alleging several new ineffective assistance of counsel claims and cumulative prejudice due to trial counsel's errors. He alleged that his counsel was ineffective because counsel failed to make proper objections to the Commonwealth's

---

[1] The jury recommended twenty years for attempted capital murder and three years for use of a firearm during the commission of a felony.

6

rebuttal argument, including argument that was beyond the scope of rebuttal, and he did not request an opportunity for surrebuttal. Specifically, Frizzell argues that his counsel should have objected to: (1) the Commonwealth arguing the natural and probable consequences of one's actions as if the inference of intent were a mandatory presumption; (2) the Commonwealth shifting the burden of proof to the defendant on the issue of voluntary intoxication; and (3) various misstatements of fact and speculation about facts not in evidence.

In addition, Frizzell alleged that while his counsel asked the jury to find Frizzell "not guilty" of capital murder, counsel did not ask for a lesser included offense; counsel did not discuss malice, the element that distinguishes murder from manslaughter, nor its requirement that the offender's mind was "under the control of reason" at the time of the offense; and counsel never related the trial evidence to the jury instruction on intoxication to explain how the law applied to the facts.

For reasons discussed further below, the district court found against Frizzell on all his claims. The court declined to issue a certificate of appealability and granted the Appellee's motion to dismiss.

Frizzell timely appealed the dismissal to this Court, which granted a partial certificate of appealability on three issues: (1) whether Frizzel's claim that trial counsel provided ineffective assistance of counsel by failing to object or request a curative instruction to the Commonwealth's closing argument, relating to Instruction 10, and the shifting of the burden of proof on intent, is substantial under *Martinez* to excuse procedural default; (2) whether the district court's conclusion that Frizzell failed to demonstrate

prejudice from trial counsel's failure to object or request a curative instruction to the Commonwealth's closing argument, relating to Instruction 21, and the shifting of the burden of proof on Frizzell's intoxication defense to the premeditation element of attempted capital murder, is contrary to, or an unreasonable determination of, federal law or an unreasonable determination of the facts; and (3) whether the district court's determination that Frizzell failed to demonstrate cumulative error is contrary to, or an unreasonable determination of, federal law or an unreasonable determination of the facts.

## II.    STANDARD OF REVIEW

Review of a district court's denial of a state prisoner's § 2254 petition is de novo. *Witherspoon v. Stonebreaker*, 30 F.4th 381, 392 (4th Cir. 2022). Although the Antiterrorism and Effective Death Penalty Act ("AEDPA") requires us to give substantial deference to a state court's review of habeas claims, the "highly deferential standard does not apply" in this action where the claims were not raised to the state court. *Sigmon v. Stirling*, 956 F.3d 183, 191 (4th Cir. 2020). Further, when a claim is not raised in state court, that claim is procedurally defaulted, and "federal review is generally foreclosed." *Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015). However, pursuant to the Supreme Court's decision in *Martinez*, where, as here, "under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. For a claim to qualify as "substantial" under

8

*Martinez* such that we may reach it despite procedural default, "the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

## III.    DISCUSSION

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice because of the claimed federal violation. *Coleman v. Thompson*, 501 U.S. 722, 746-47 (1991). In establishing cause for default, *Martinez* requires a petitioner to show: "(1) the underlying ineffective-assistance-of-trial-counsel claim is 'substantial'; (2) the prisoner was not represented or had ineffective counsel during the state PCR [post-conviction relief] proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required the prisoner to bring the claim in the initial-review collateral proceeding." *Moore v. Stirling*, 952 F.3d 174, 185 (4th Cir. 2020) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013))*; see also Martinez*, 566 U.S. at 1, 14, 17 (2012). Under this test, when state post-conviction proceedings are the first place one can raise ineffective assistance of counsel claims (as is the case in Virginia),[2] then absence of counsel or ineffective assistance of counsel essentially establishes the cause for default.

In his pro se petition in state court, Frizzell raised ineffective assistance of counsel claims (albeit not the same claims as are found in this matter). Despite having an attorney

---

[2] *See generally Hall v. Commonwealth*, 515 S.E.2d 343, 347 (Va. Ct. App. 1999) (noting that, "in 1990, the legislature repealed Code § 19.2-317.1 which provided for direct appeal of certain ineffective assistance claims").

very briefly, the attorney played no substantive role in his habeas case, so Frizzell acted pro se for all practical purposes. Taken together, prongs two through four of *Martinez* are met for his claims.

Remaining is prong one of *Martinez*. Under that element, a claim is substantial when it has merit. 566 U.S. at 14. Substantiality does not mean a petitioner "automatically prevails"; rather it means that "part of the gateway for considering an otherwise defaulted claim for ineffective assistance of counsel" has been met. *Frizzell v. Clarke*, No. 7:20CV00685, 2021 WL 4261519, at *7 (W.D. Va. Sept. 20, 2021). This requires showing both that counsel's performance was deficient, and that the deficiency prejudiced the defendant. *Strickland*, 466 U.S. at 687.

To show prejudice under *Strickland*, Frizzell must first show that counsel's performance was so deficient that counsel essentially failed to function as the "counsel" guaranteed under the Sixth Amendment. *Id.* The objective standard for attorney performance is that of "reasonably effective assistance." *Id.* at 683, 687 (quoting *Trapnell v. United States*, 725 F.2d 149, 151-52 (2d Cir. 1983)). And any deficiency must have prejudiced the defense to the extent that it is reasonably likely that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Strickland*, 466 U.S. at 694). This does not require a showing that counsel's actions "more likely than not altered the outcome," but the possibility must be more than just conceivable; it must be substantial. *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693).

10

To summarize, for Frizzell to use *Martinez* to excuse the procedural default of his ineffective assistance of trial counsel claims, he must show that they are meritorious. This includes a showing that trial counsel's errors, such as they were, prejudiced his defense under *Strickland*—meaning that, but for those alleged errors, there is a substantial possibility that the outcome of the trial would have been different. For the reasons discussed below, we conclude that Frizzell cannot demonstrate a reasonable possibility that the outcome of the trial would have been different but for defense counsel actions and inactions; accordingly, under *Martinez*, his claims remain defaulted.

a.  Failure to Object on Presumption of Intent

Frizzell contends that his counsel provided ineffective assistance by failing to object to, or request curative instruction when, during the prosecutor's rebuttal argument – which was given after the court had instructed the jury – he stated, "You have an instruction that says you intend the natural and probable consequences of your actions." Frizzell argues that this transformed Jury Instruction 10, which stated, "You may infer that every person intends the natural and probable consequences of his acts," from a permissible inference to a mandatory one.

Frizzell argues that this violated his due process rights under *Sandstrom v. Montana*, 442 U.S. 510 (1979) and *Francis v. Franklin*, 471 U.S. 307 (1985), which differentiate between inferences that the jury *must* make, and those that the jury *may* make. Mandatory inferences "violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Francis*, 471 U.S. at 314. As a result, inferences

11

relating to burdens should be expressed using permissive language that "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.*

However, in *Sandstrom* and *Francis*, unlike in this case, the court gave erroneous jury instructions regarding a mandatory presumption of intent. 442 U.S. at 513; 471 U.S. at 309. Here, the trial judge properly instructed the jury, "You may infer that every person intends the natural and probable consequences of his acts." This instruction does not relieve the State of its burden of persuasion. In addition, while Frizzell focuses on the prosecutor's rebuttal, when first referencing Jury Instruction 10 during closing, the prosecutor stated, "[The instruction] says you *may* infer that every person intends the natural and probable consequences of his acts." (emphasis added). This is a correct statement of law.

Further, jury instructions from the court carry greater weight with jurors than do arguments of counsel. *Boyde v. California*, 494 U.S. 370, 384 (1990). Just prior to sending the jury off to deliberate, the court reminded the jury that, "[Y]our verdict must be based solely on the evidence that you've heard in the courtroom, and the law that I have instructed you on." Also, in addition to the jury receiving correct oral instructions from the court, they were sent back to deliberate with correctly written jury instructions.

Moreover, when the prosecutor's statement is considered in context, he clearly was not attempting to suggest the inference was mandatory; rather, he was emphasizing the inferences that could be made from the evidence in support of his conclusion that Frizzell intended to kill. As previously noted, the prosecutor correctly stated, "Instruction number 10. That says that you may infer that every person intends the natural and probable

12

consequences of his acts." He later followed this up with the alleged burden shifting

statement:

> You have an instruction that says you intend the natural and probable
> consequences of your actions. We don't have a statement from this defendant
> that says Jason, I'm going to kill you now. And then starts shooting at him.
> We never have those. People almost never say that. But they get convicted
> because the law says you intend the natural and probable consequences of
> your actions. If somebody comes in and says well, I, I was just trying to scare
> him when I was putting the bullet holes in him. No, we know what the intent
> was . . . . [Y]ou can now come in and try to say what your intent is but the
> intent is that you tried to kill him. So you look at the natural and probable
> consequences of their actions.

Then, shortly thereafter, the prosecutor again correctly argues that he carries the

burden of proof on intent:

> We [the prosecution] have to prove that this defendant intended to kill. You
> don't pull out a gun and point it at somebody and fire shots at them when
> they're standing here, and then when they dodge fire another shot over here,
> and then fire three more shots that we never found, without having an intent
> to kill somebody.

Including his statements above, the prosecutor also spent a substantial portion of his

rebuttal arguing why the jury should conclude that Frizzell intended to kill Woods,

implicitly refuting any argument that such intent should be presumed:

> A bullet comes whizzing by . . . . [Woods is] standing right here . . . . That's
> an intent. He's not just shooting to celebrate, or shooting to scare, or shooting
> as [an] instinctive reaction . . . . [H]e's trying to shoot [Woods] . . . . You got
> to pull this trigger every single time. This is not a . . . fully automatic machine
> gun . . . . How many times he pulls the trigger, five times.

Given the full scope of the prosecutor's argument and the governing law, defense

counsel may have viewed an objection as unnecessary or a tactical move. *See*, *e.g.*, *United*

*States v. Basham*, 789 F.3d 358, 386 (4th Cir. 2015) ("Experienced trial counsel learn that

13

objections to each potentially objectionable event could actually act to their party's detriment. Learned counsel . . . use objections in a tactical manner.") (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)). Under Virginia law, the intent to kill "need only exist for a moment." *Peterson v. Commonwealth*, 302 S.E.2d 520, 524 (Va. 1983); see *also Giarratano v. Commonwealth*, 266 S.E.2d 94, 100 (Va. 1980) (noting that "seconds" is "ample time" to form "a design and purpose to kill"). Here, witness testimony established that after being tased, Frizzell put his hand in his pocket and stated either "Jason, you've done fucked up now," or "Jason, don't fuck up now, brother." Then, despite four or five commands to remove his hand from his pocket, he did not comply. Instead, after eight seconds, he pulled a loaded revolver out of his pocket, aimed at Deputy Woods, and pulled the trigger between three and five times, until the gun was empty. Therefore, an objection of counsel to the prosecutor's arguments on intent might reasonably have been viewed as unnecessary or unwise.

Also, for the same reasons, even if Frizzell's claim could meet the first prong of deficient performance under *Strickland*, it would be difficult to show that it is reasonably likely that the outcome of trial would have been different had defense counsel objected. Indeed, even absent the prosecutor's alleged misstatement, with the evidence presented, it is more than likely that the jury would still have rendered a guilty verdict.

In sum, when taken as a whole, the prosecutor's statements, the evidence, and the court's instructions did not "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). As a result, we affirm the district

14

court's holding that Frizzell's ineffective assistance claim relating to intent is not substantial under *Martinez* and does not overcome the procedural default.

### b. Failure to Object on Burden of Proof on Intoxication

Frizzell next contends that his counsel provided ineffective assistance when he failed to object to the prosecutor's thrice repeated rebuttal arguments that Frizzell had to prove he was so intoxicated that he was incapable of premeditation. Specifically, Frizzell believes the following prosecutorial rebuttal statements improperly shifted the burden of proof on intoxication to the defendant: (1) "[T]he law in Virginia says . . . you have to prove, you have the burden now of proving that you were so drunk . . . that [you were] incapable of making any decisions"; (2) "He's aware of it. He's not making wise decisions, but he's aware of what he is doing . . . he has to prove that he's so incapable he's unaware of what he's doing"; and (3) "And it was not voluntary intoxication because he cannot prove that he was incapable of doing it, incapable of premeditating." Also, he suggests that the prosecutor distorted the burden to such that he had to almost prove insanity, by stating "[H]e has to prove he's so incapable he's unaware of what he's doing."

***Deficient Performance***

As previously stated, under *Strickland*, Frizzell must prove both deficient performance and prejudice to prove ineffective assistance of counsel. 466 U.S. at 687. Deficient performance requires a showing that counsel's performance fell below an objective standard of "reasonableness under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume

15

that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689, 699. This is especially true when reviewing counsel's failure to object to the prosecutor's closing argument, given the numerous recognized "tactical" reasons for choosing not to object to an improper argument. *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir. 1996).

However, the court is not required to consider a decision as a tactical choice when there is no reasonable tactical explanation for not objecting. *See Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2006). "When a defendant's lawyer is confronted with error during a judicial proceeding, he has the responsibility to object contemporaneously," so that the trial court can take appropriate corrective action. *United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017).

***Premeditation and Voluntary Intoxication in Virginia***

While there are many definitions of malice under Virginia law, a common theme is the requirement that a wrongful act be done "wilfully or purposefully." *Essex v. Commonwealth*, 322 S.E.2d 216, 220 (Va. 1984) (quoting *Williamson v. Commonwealth*, 23 S.E.2d 240, 241 (Va. 1942)). Relatedly, premeditation is "an intent to kill that needs to exist only for a moment." *Kirby v. Commonwealth*, 653 S.E.2d 600, 604 (Va. Ct. App. 2007) (quoting *Coles v. Commonwealth*, 621 S.E.2d 109, 112 (Va. 2005) (citation omitted)). Thus, premeditation is an element of malice.

In Virginia, voluntary intoxication is not an affirmative defense to any crime, but it may negate deliberation and premeditation in capital and first-degree murder cases. *See, e.g.*, *Morgan v. Commonwealth*, 646 S.E.2d 899, 902, 904 (Va. Ct. App. 2007) ("[E]xcept

16

in cases of first degree and capital murder, where proof of voluntary intoxication may negate deliberation and premeditation, such intoxication, whether from drugs or alcohol, is no defense to a criminal charge," and "[V]oluntary intoxication does not constitute an affirmative defense unless it produces a permanent insanity."). "However, proof of mere intoxication is insufficient; the defendant must establish intoxication so great it rendered him incapable of premeditation." *Lawlor v. Commonwealth*, 738 S.E.2d 847, 871 (Va. 2013) (citing *Giarratano*, 266 S.E.2d at 99). "[E]ven testimony that the defendant was drinking on the day of the offense is insufficient to establish that he was too intoxicated to form the requisite intent." *Id.* (emphasis omitted) (quoting *Waye v. Commonwealth*, 251 S.E.2d 202, 211, *cert. denied,* 442 U.S. 924 (1979)). Further,

> [T]he defendant's degree of intoxication, however great, neither enhances nor impairs the set of facts relied upon to establish . . . malice. In making the determination whether malice exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death . . . , and whether it was volitional or inadvertent; not by the defendant's blood-alcohol level.

*Essex*, 322 S.E.2d at 221.

### *Burden Shifting*

As previously stated, during rebuttal, the prosecutor made the following statements: (1) "[T]he law in Virginia says . . . you have to prove, you have the burden now of proving that you were so drunk . . . that [you were] incapable of making any decisions"; (2) "He's aware of it. He's not making wise decisions, but he's aware of what he is doing . . . he has to prove that he's so incapable he's unaware of what he's doing"; and (3) "And it was not

17

voluntary intoxication because he cannot prove that he was incapable of doing it, incapable of premeditating."

Frizzell characterizes these statements as the prosecutor shifting the burden of proof on intoxication impermissibly to the defendant, relying on two cases where the court found prejudice after a prosecutor made a misstatement of law. However, those cases are easily distinguished because of the prosecutors' conduct beyond the statements. In *Hodge v. Hurley*, the prosecutor also made inappropriate and derogatory statements about witnesses' characters. 426 F.3d 368, 383-84 (6th Cir. 2005). And, in *Zapata v. Vasquez*, the prosecutor made false statements that were totally unsupported by evidence. 788 F.3d 1106, 1114 (9th Cir. 2015). In both cases, the only curative instruction provided by the court was that arguments of counsel "are not evidence." *Hodge*, 426 F.3d at 384 n.24; *Zapata*, 788 F.3d at 1123.

In contrast, when considered in context, the prosecutor's statements here are different. The prosecutor clearly stated that he carried the burden of proof as to premeditation, argued that he had clearly demonstrated premeditation, and that to negate it, the defendant could show intoxication so great that he was incapable of doing so. In so arguing, the prosecutor made correct statements of the law in Virginia.

First, in his closing, the prosecutor stated, correctly:

> If you find that the defendant was so greatly intoxicated by the voluntary use of alcohol, that he was incapable . . . of deliberating or premeditating, then you cannot find him guilty of any offense greater than attempted second degree murder . . . . Again, it's not that he was intoxicated . . . . It's that he was incapable of forming that intent.

Later, in rebuttal, the prosecutor states:

18

[T]he law in Virginia says . . . [if you are going to argue intoxication then] you have to prove, you have the burden now of proving that you were so drunk . . . . The standard is incapable, not that he's impaired, that he's making bad decisions, that he's incapable of making any decisions . . . . [I]t's not the question of whether it's something we think is a good or bad idea, it's whether he was able to form the idea at all.

He then goes on to say, "If you find that he can't formulate that idea, that he's incapable . . . to have thought I'm going to kill that deputy, and start pulling, and start shooting at him, then it is attempted second degree murder."

When considered all together, the prosecutor's statements correctly reflect Virginia law in substance. For example, when the prosecutor used the phrase "incapable of making any decisions," he quickly clarifies that he means whether Frizzell was able to form the idea to kill at all – which is a correct statement of the law.

Again, the overall thrust of the prosecutor's argument is appropriate, if perhaps exaggerated in part. *See United States v. Sutherland*, 921 F.3d 421, 429 (2019) ("Closing arguments are . . . prone to exaggeration; we rely on juries and the adversarial process to place them in perspective."). The prosecutor states:

[T]he defendant is aware that he's been tased . . . . He's aware of it. He's not making wise decisions, but he's aware of what he is doing. And that's the standard that we've got . . . . [H]e has to prove that he's so incapable he's unaware of what he's doing.

He compares the "awareness" required for premeditation with the "unawareness" or "instinct" to swat and kill a bee when it stings you. Thus, it is clear the prosecutor is using exaggeration to delineate the line between premediated and non-premeditated.

The prosecutor also argued all of the reasons why he believed Frizzell both had the ability to and actually did premeditate, including having a conversation with a witness

19

[Holland] and his wife just prior to his arrest; recognizing and identifying Deputy Woods by his first name, and making a threatening statement to him after being tased; putting his hand in his pocket for eight seconds, ignoring commands to remove it; pulling the revolver from his pocket, aiming it at Deputy Woods, and individually pulling the trigger somewhere between three and five times until the gun was empty; noting that the bullet hole in the garage was head level and behind where Deputy Woods had been standing; and finally that he was able to communicate well enough with police to tell them to remove the taser probes from his back after being tased.

> Finally, the prosecutor wrapped up by saying:

> We have to prove that this defendant intended to kill . . . . I'm telling you we've proven attempted capital murder . . . . It was an intent to kill. It was willful, deliberate and premeditated . . . . And it was not voluntary intoxication because he cannot prove he was incapable of doing it, incapable of premeditating.

This, too, is a correct statement of law. As cited above, Virginia law holds that once premeditation has been shown by the prosecution, the burden of showing intoxication so great as to be incapable of premeditation falls to the defendant. *See, e.g.*, *Giarratano*, 266 S.E.2d at 871 (citation omitted) (noting a defendant who has become "so intoxicated as to be unable to deliberate and premeditate cannot commit any class of murder that is defined as a wilful, deliberate and premeditated killing," and that "mere intoxication from drugs or alcohol" is not enough to negate premeditation); *Essex*, 322 S.E.2d at 220 (stating the "defendant may negate the specific intent requisite for capital or first-degree murder by showing that he was so greatly intoxicated as to be incapable" of premeditation); *see also Lawlor*, 738 S.E.2d at 871; *Waye*, 251 S.E.2d at 211.

20

*Burden Distorting*

As noted, Frizzell also contends that the prosecutor's single statement that, "[H]e has to prove that he's so incapable he's unaware of what he's doing," is akin to insanity rather than the proper standard of "incapability." We disagree.

On this point, our case *McHone v. Polk* is instructive. McHone, charged with first degree murder after killing his mother and stepfather, asserted a defense of voluntary intoxication. 392 F.3d 691, 696 (2004). McHone presented the testimony of two friends who reported that after ingesting alcohol and acid, McHone was staggering and had slurred speech. *Id.* at 696. The prosecution, however, presented evidence that despite drug and alcohol consumption, McHone was drunk but coherent, able to walk, and his speech was not slurred. *Id.* at 700-02 (majority opinion), 717-18 (Gregory, J., concurring).

During closing arguments, the prosecution misstated the law in a way that shifted the burden of proof to McHone, stating McHone had to show he was "utterly incapable of forming a deliberate and premeditated purpose to kill" due to intoxication. *Id.* at 707 (majority opinion). However, we found this error was not prejudicial because the trial court provided correct and comprehensive jury instructions on the legal standards for voluntary intoxication and the jury was properly instructed on how to consider the intoxication defense. *Id.* at 707-08. We also noted that the Supreme Court "teach[es] that juries *are presumed* to follow . . . instructions." *Id.* at 711. Thus in *McHone*, we presumed that the jury followed their instructions, which mitigated any confusion caused by the prosecutor's misstatements. *Id.* at 711-12.

21

As in *McHone*, Frizzell presented evidence of intoxication, and during the trial there was conflicting information as to whether he was coherent [and thus able to premeditate]. In both cases, the prosecutor alluded to the defendant needing to show more than just being incapable of premeditating.[3] *Id.* at 707. But, in both cases, the jury instructions were correct. Frizzell's jury was instructed that it was the prosecution's responsibility alone to prove premeditation and deliberation. The prosecutor then stated several times during the trial that the State bore the burden of proof, and this was reiterated by the trial judge just before closing arguments began. The prosecutor also correctly stated that once premeditation was shown, the defendant *then* bore the burden of proving he was so intoxicated as to be unable to premeditate. The prosecutor spoke at length as to the evidence supporting his argument that Frizzell did premeditate. Further, the trial judge stated twice to the jury that "what the lawyers say … is not evidence"; rather it is their "recollection of the evidence." Moreover, just prior to receiving jury instructions, the court instructed the jury that all instructions from the court were to be followed. Finally, the jury was correctly instructed on voluntary intoxication, and the court noted that copies of the jury instructions (including the instruction on voluntary intoxication) would be available in the jury room during deliberations.

As noted by the district court, "deficient performance alone is not enough to prevail on a claim of ineffective assistance of counsel." *Frizzell*, 2021 WL 4261519, at *14. Frizzell must also prove prejudice, [meaning] that there exists "a reasonable probability

---

[3] Specifically, in *McHone*, the prosecution said, "utterly incapable" and in *Frizzell*, the prosecution stated, "unaware of what he's doing."

that, but for counsel's [deficiency], the results . . . would have been different." *Id.* Here, Frizzell, as in *McHone*, cannot prove that a single misstatement overcomes all the other evidence to support a finding of prejudice. In sum, we do not find a reasonable probability that the outcome would have been different had counsel objected to the statement. Thus, we will affirm the district court's decision to dismiss Frizzell's petition.

### c. Cumulative Prejudice

This Court has foreclosed cumulative error analysis in certain instances. Specifically, we have stated that "ineffective assistance of counsel claims . . . must be reviewed individually, rather than collectively." *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). As such, even if Frizzell had demonstrated prejudice under *Strickland*, no cumulative analysis would have been possible under this binding precedent.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's dismissal of Frizzell's habeas claim.

*AFFIRMED*

23

FLOYD, Senior Circuit Judge, concurring in part, dissenting in part, and dissenting from the judgment:

The Court today holds that a defendant bears the burden of disproving an element of an offense. More specifically, the majority finds that, under Virginia law, "once premeditation has been shown by the prosecution, the burden of showing intoxication so great as to be incapable of premeditation falls to the defendant." Majority Op. 20. In this way, perhaps more accurately, the Court today holds that a defendant must disprove premeditation after the prosecution proves premeditation. This defies both logic and due process. I therefore respectfully dissent from Part III.B, which affirms the dismissal of Frizzell's ineffective assistance claim relating to voluntary intoxication. I concur with the remaining Parts of the opinion.

## I.

To secure Frizzell's conviction for attempted capital murder, the Commonwealth was required to prove each of the following elements beyond a reasonable doubt: "(1) That Mr. Frizzell attempted to kill Jason Woods; and (2) That the attempt to kill was willful, deliberate, and premeditated; and (3) That the attempt to kill was malicious; and (4) That the attempt to kill was of a law enforcement officer and for the purpose of interfering with the performance of his official duties." JA 132.[1]

---

[1] I disagree with the majority that "premeditation is an element of malice" (Majority Op. 16); malice and premeditation are separate elements.

24

Under Virginia law, "[t]o premeditate means to adopt a specific intent to kill." *Smith v. Commonwealth*, 389 S.E.2d 871, 879 (Va. 1990) (quoting *Rhodes v. Commonwealth*, 384 S.E.2d 95, 98 (Va. 1989)).  More precisely, the Supreme Court of Virginia has instructed: "The exact state of the defendant's mind at the time of killing is the crucial factor in determining intent.  It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense." *Smith v. Commonwealth*, 261 S.E.2d 550, 553 (Va. 1980) (internal quotation marks omitted).  Also under Virginia law, while not an affirmative defense, "[e]vidence of intoxication may …be used to negate the specific intent for capital or first-degree murder." *Emmett v. True*, No. 7:05-CV-00329, 2006 WL 482417, at *6 (W.D. Va. Feb. 27, 2006), *aff'd sub nom. Emmett v. Kelly*, 474 F.3d 154 (4th Cir. 2007) (citing *Essex v. Commonwealth*, 322 S.E.2d 216, 220–22 (Va. 1984)); *see also Morgan v. Commonwealth*, 646 S.E.2d 899, 902, 904 (Va. Ct. App. 2007).[2]

Where I depart from the majority is in its conclusion that a defendant's ability to negate premeditation amounts to a burden to disprove premeditation.  Our Circuit has continually recognized that a state must "shoulder the burden of proving beyond a reasonable doubt all of the elements of a crime." *Morris v. State of Md.*, 715 F.2d 106, 110 (4th Cir. 1983).  Virginia courts have, of course, recognized the same.  *See, e.g.*, *McGhee v. Commonwealth*, 248 S.E.2d 808, 810 (1978) ("It can be safely said that in Virginia there is no principle more firmly imbedded in the body of the law, or one that has been more

---

[2] It is true that states need not permit a voluntary intoxication defense, *see Montana v. Egelhoff*, 518 U.S. 37 (1996), but Virginia has opted to do so.

25

often stated, than the principle that in every criminal case the evidence of the Commonwealth must show, beyond a reasonable doubt, every material fact necessary to establish the offense…. This burden of proof never shifts.").

Relevant here, we have held that such a foundational due process principle "necessarily forbids the state to put the burden of proving the negation of one of those elements on the defendant, for that is but another way of requiring the defendant to disprove an element of the offense." *Morris*, 715 F.2d at 110. Proof of negation would also impose "conflicting and inconsistent burdens," creating a serious risk that "the jury would rely on a presumption of [the element], arising from the defendant's failure to prove [the defense]." *Id.* Nearly every circuit has had occasion to hold the same. *See, e.g., United States v. Leal-Cruz*, 431 F.3d 667, 671 (9th Cir. 2005) ("[W]hen a defense negates the element of a crime, it is unconstitutional to place the burden of proving the defense on the defendant"—i.e., the "negate the required elements test.") (citing *Martin v. Ohio*, 480 U.S. 228, 234 (1987)); *United States v. Deleveaux*, 205 F.3d 1292, 1298 (11th Cir. 2000) ("[I]f a defendant asserts a defense that has the effect of negating any element of the offense, the prosecution must disprove that defense beyond a reasonable doubt.").

Virginia courts have followed suit, finding that defenses that negate an element of an offense must be treated differently than those that do not. *See, e.g., McGhee*, 248 S.E.2d at 810 ("The defense that a killing was accidental presents a different issue from a claim that a killing was done in self-defense. For the Commonwealth to establish murder it must show those elements which completely negate an accidental killing, [i].e., that the killing was willful, deliberate and malicious. Self-defense in Virginia is an affirmative defense,

26

the absence of which is not an element of murder."); *Myers v. Commonwealth*, 857 S.E.2d 805, 809 (Va. 2021) ("The Commonwealth's burden of proving an intentional homicide necessarily requires it to disprove any reasonable doubt that the killing was an accident," but statutory exceptions "are not 'negative' elements" as they render the statue "inapplicable, not inaccurate."); *Calokoh v. Commonwealth*, 883 S.E.2d 674, 681 (Va. Ct. App. 2023) (An alibi "is not an affirmative defense, but a denial of an essential element of the offense…. With these types of defenses, the burden of proof remains on the prosecution, and the defendant need only offer enough evidence (e.g., of an alibi) to create a reasonable doubt as to guilt.") (cleaned up).

In *Smith*, the Supreme Court confirmed that an element-focused test determines the due process violation.  *See Smith v. United States*, 568 U.S. 106, 110 (2013).  *Smith* held that "[a]llocating to a defendant the burden of proving withdrawal does not violate the Due Process Clause" because, like with self-defense, the elements of conspiracy and withdrawal "[do not] overlap in the sense that evidence to prove the latter will often tend to negate the former."  *Id.* (quoting *Martin*, 480 U.S. at 234).  As a result, it is only when a defense "excuse[s] conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself, [that] the Government has no constitutional duty to overcome the defense beyond a reasonable doubt."  *Id.* (cleaned up).

As applied to voluntary intoxication, this Court has expressly held that when a jury is instructed that the defendant must prove that "he was so intoxicated as to be incapable of entertaining the specific intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted," the issue "need not concern us

27

long" as the "violat[ion] of [the defendant's] constitutional rights … is beyond dispute."

*Guthrie v. Warden, Maryland Penitentiary*, 683 F.2d 820, 822–23 (4th Cir. 1982) (A state

cannot "impose[] on the defendant the burden of negating criminal intent by proving that

he acted under the heat of passion or in a state of extreme intoxication.").

This holding does not stand alone. *See, e.g.*, *McHone v. Polk*, 392 F.3d 691, 707

(4th Cir. 2004) (prosecutor made incorrect statements of law which "could have led a

rational jury to believe that defendant bore the burden of persuading the jury that he was

so intoxicated as to be unable to form a deliberate and premeditated intent to kill"); *Brown*

*v. McDaniel*, No. 3:09-CV-00557, 2018 WL 1567839, at *3 (D. Nev. Mar. 30, 2018), *aff'd*

*sub nom. Brown v. Filson*, 769 F. App'x 494 (9th Cir. 2019) (the following instruction

"improperly shifted the burden of proving intoxication" and "dilute[d] the State's burden

of proving each and every element of the crime beyond a reasonable doubt": "[t]he burden

of proof is upon the defendant to show by a preponderance of the evidence that he was

intoxicated to such an extent that he did not premeditate or deliberate").[3]

As a result, in order to comply with fundamental due process rights, Virginia's

voluntary intoxication defense must be read as imposing only a burden of production upon

---

[3] Before *Smith*, a minority of courts permitted defendants to prove voluntary intoxication, but, even then, some acknowledged that the holding defied logic. *See Long v. Brewer*, 667 F.2d 742, 747 (8th Cir. 1982) ("We too have some difficulty, in the abstract, with the distinction between requiring a defendant to disprove what was in substance an element of the crime … and requiring him to prove a defense (here intoxication) that may negative an element of the crime.").

defendants.[4]  Here, the prosecutor clearly and repeatedly stated that Frizzell maintained a burden of persuasion to prove intoxication and negate premeditation: "the law in Virginia says … you have to prove, you have the burden now of proving that you were so drunk … that [you were] incapable of making any decisions" (J.A. 91–92); "he has to prove that he's so incapable he's unaware of what he's doing" (J.A. 104); and "it was not voluntary intoxication because he cannot prove that he was incapable of doing it, incapable of premeditating" (J.A. 119–20).  These statements plainly misstate the burden of proof and should be analyzed accordingly.

## II.

After excusing procedural default for this second ineffective assistance claim, the district court assessed the merits and found only deficient performance.  The court reasoned that "[f]ailing to object to repeated unconstitutional misstatements of the burden of proof falls below an objective standard of reasonable performance," but Frizzell was not prejudiced because "[j]urors likely view statements of counsel as advocacy," and the

---

[4] The majority finds that Virginia defendants can bear a burden to disprove premeditation after the Commonwealth proves premeditation beyond a reasonable doubt (Majority Op. 20), but (a) I do not read Virginia case law as expressly imposing such an order of operations, (b) if it does, this jury was not instructed accordingly, and (c) it remains inherently contradictory that premeditation could be both proved and disproved in the same case.  Virginia practitioners recognize the same.  *See* Intoxication, Va. Prac. Criminal Offenses & Defenses I21 n.11 (2023) ("The [voluntary intoxication] burden is procedural only.  The jury should not be instructed on it because to instruct creates a risk that the jury will understand that the defense has a burden of persuasion.").

statements must be evaluated in the context of the entire trial, including instructions from the court. J.A. 179–80.

I agree that trial counsel's performance was deficient because I see "no strategic reasons that could have justified counsel's failure to object" to repeated misstatements of the law, particularly misstatements that lowered the Commonwealth's burden of proof. *United States v. Carthorne*, 878 F.3d 458, 469 (4th Cir. 2017). However, I disagree that Frizzell did not suffer prejudice. As outlined below, unlike the lesser included offenses, attempted capital murder required a finding of premeditation, and the prosecutor clearly and repeatedly misinformed the jury about how to make this finding. In light of the substantial evidence of Frizzell's intoxication, had trial counsel addressed the prosecutor's misstatements, there is a "reasonable probability" that the jury would not have found premeditation, and "the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In at least three sections of his rebuttal, the prosecutor distorted the premeditation burden and thereby mislead the jury about the findings necessary to convict Frizzell of attempted capital murder. *See, e.g.*, J.A. 104 ("[H]e has to prove that he's so incapable he's unaware of what he's doing."). The prosecutor never corrected these misstatements, and, although we assume that they were viewed as "matters of argument," this assumption has never been powerful enough to prevent all prejudice—hence, the use of curative instructions. *See Boyde v. California*, 494 U.S. 370, 384 (1990) ("Arguments of counsel which misstate the law are subject to objection and to correction by the court.").

30

The failure to object or request a curative instruction was especially meaningful here because, unlike in *McHone* (*see* Majority Op. 22–23), the prosecutor explicitly stated that Frizzell had a "burden of proof." *Compare* J.A. 91–92, 104, 119–20 ("[T]he law in Virginia says … you have the burden now of proving"; "he has to prove"; and "he cannot prove"), *with McHone*, 392 F.3d at 707 ("Evidence must show."). The impact of these statements is only emphasized by the fact that they were the final words the jury heard about intoxication before deliberating. *Compare* Frizzell's Opening Br. 7 ("jury instructions were given *before* the closing arguments"), *with McHone*, 392 F.3d at 708 ("[T]he trial court's clear, particularized, correct instruction followed almost immediately upon the prosecutor's closing statement.").

Moreover, even if we assume, as we should, that the jury followed the earlier-provided jury instructions, those instructions did not specifically address the intoxication burden. The jury instructions did not expressly state that it was the Commonwealth that must disprove sufficient intoxication in order to prove premeditation. *See* J.A. 143; *see also United States v. Moore*, 651 F.3d 30, 89 (D.C. Cir. 2011), *aff'd sub nom. Smith v. United States*, 568 U.S. 106 (2013) ("[W]hen a defendant raises (by meeting his burden of production) a defense that negates an element of the charged offense, the government bears the burden of persuasion to disprove the defense.").

Without a proper instruction on the intoxication burden, the jury was bound to misapply the law. Because Frizzell presented substantial evidence of intoxication, this misapplication likely had a meaningful effect on the jury's "finding" of premeditation. Frizzell's intoxication evidence included testimony from multiple witnesses that he was

31

"in an alcoholic blackout," urinated on himself, had bloodshot eyes and a "thousand-yard stare," made "off the wall" comments, was actively drinking beer, did not notice that he had been shot in the thigh, and, more generally, had been drinking "daily, often to the point of passing out … and becoming non-communicative." J.A. 150–59. Frizzell also presented two experts, a forensic toxicologist and a clinical psychologist, who explained how his intoxication level (from both alcohol and marijuana) would cause "severe impairment" and "significantly and adversely" affect his decision-making and self-control. J.A. 159–60.

But ultimately, all such evidence meant little if the jury applied an unconstitutionally high burden to assess it (i.e., if the jury believed that Frizzell had a burden to disprove premeditation rather than a burden to produce intoxication evidence). As a result, had trial counsel addressed the improper burden shift, I find that there is a "reasonable probability" that the jury would not have found premeditation and convicted Frizzell of attempted capital murder. *Strickland*, 466 U.S. at 694. As the Supreme Court has instructed, "when there exists a reasonable possibility that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside." *Francis v. Franklin*, 471 U.S. 307, 324 n.8 (1985). I therefore would reverse the district court's finding of no prejudice and hold that Frizzell's second *Strickland* claim succeeds.

## III.

Based on the foregoing, I would affirm in part and reverse in part the judgment of the district court and remand with instructions to issue a habeas writ unless the Commonwealth elects to retry Frizzell within ninety days of this opinion.

32